### ACME FLEXIBLE CLASP CO. v. CARY MFG. CO.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

#### No. 129.

PATENTS—INFRINGEMENT—STAPLE FASTENERS.

    The Swett patent, No. 314,204, for a staple fastener for wooden vessels, discloses invention, and is not void for anticipation or prior use; also, *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the circuit court, Southern district of New York, holding that letters patent 314,204, of March 17, 1885, to W. O. Swett, for a staple fastener for wooden vessels, were valid, and infringed by defendant, and awarding an injunction and accounting. 96 Fed. 344, 99 Fed. 500.

John P. Bartlett, for appellant.

Douglas Dyrenforth, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The specification states that:

"The invention consists in a staple, whose pointed shanks are projections from a plate which is made so thin at its middle portion as practically to be nonelastic, whereby the shanks, which are driven into the wood, will not be drawn out by the spring of the metal, and at the same time the thickness of the connecting-plate shall not be such as to interfere when storing or handling fastened packages, or the shanks be removed by contact with other articles. A, B, C, D, represent the fastener ready for use. D, D, are the shanks, which are made pointed at their ends, and of heavy metal at C, C, where they are turned substantially at right angles to the plate, A, B, B. Those portions of this plate at B, B, are of thick metal to form sufficient heads for driving the shanks, D, D, into wood. The middle portion, however, from B to A, is formed gradually thinner, that it may be easily bent over the corner of a package."

Fig. 1.

"In the manufacture of these fasteners I prefer, as the best means now known, to make the devices of a continuous wire of the proper size and strength, and cut it in the required length diagonally, as the wire, is passing on ordinary dies for that purpose, when the metal is hot, and by a swage, before the metal is cold, flatten the central part, *A.* at the same time bending the shanks, D, D. * * * By this method of construction my invention is attained; that is, a fastener whose connecting plate or bar contains less metal in cross section than the shanks at C, C, or metal made so thin that where bent it has practically no spring to draw out the shanks, D. In practice, the thick parts, B, terminate so soon in the thin plate, A, that they will be so imbedded in the wood, where the shanks are properly driven, that for ordinary packages the fastener will not project from the wood only about the thickness of ordinary sheet tin. * * * I claim that a staple fastener with any form of reduced metal at the middle portion of the bar, A, would be my invention, providing the spring of the metal was reduced so as not to draw on the shanks, D, D, where applied to a package."

The single claim of the patent reads:

"A fastener for securing wooden-package covers, formed of a single piece of metal, with tapered shanks, D, and a thin metal plate, A, which is thick enough at its junction with bases, C, of shanks, D, to form heads, B, for driving the shanks, D, in the wood, as specified."

Various patents are cited in defense: Barney, 155,916, of October 13, 1874; Cary, 180,198, of April 11, 1876; Winne, 205,226, of June 25, 1878; Moore, 244,282, of July 12, 1881; Willard, 303,775, of 1884. All of these, except Cary, are for fastening wooden covers to wooden tubs, barrels, or boxes. Evidently a practical and efficient fastener had been sought for, for 10 years before the issue of the patent in suit. Subsequent to such issue the assignees of the patent began to manufacture and offer to the public. Their output of the new fasteners has increased until it is is now nearly 60,000,000 a year, and for 13 years since the issue of the patent there appears to have been but one infringer, who desisted promptly when threatened with suit. None of the prior patents above cited anticipate. In Barney, Cary, Winne, and Willard, the fasteners are made of wire, which is not thinned at the place where it is intended to be bent so as to reduce the spring of the metal. The prior patent which comes nearest to the one in suit is Moore, 244,282, of July 12, 1881, for a tub-fastener. This device is shown in the following figure:

Fig. 1.

A is a strip of tin or other suitable sheet metal, into opposite ends of which are inserted headed nails or tacks, B, B. To prevent the tacks from falling out, the ends of the strip through which the tacks are inserted are doubled in under the strip as shown in the drawing. The entire strip is so thin as to be substantially without spring when bent, but, composed as it is of three parts, it lacks rigidity, and the folded end portion, containing two lapped-over thicknesses of the metal besides the head of the tack or nail, will project above the surface of the wood, because its broad, flat base cannot well be driven in, whereas the shanks of complainant's patent can be driven in until

the bend itself is sunk so far into the wood that it will not project more above the surface to which it is applied than will the central, thinned portion of the staple. In view of the Moore patent and of the state of the art, the patent in suit is an extremely narrow one; but in view of the favor with which it has been received by the trade, and the long acquiescence shown, we are not prepared to hold that there was no invention in so reorganizing the fastener of the prior art as to produce for the first time a device which the expert describes as a "fastener having two tapered or pointed shanks at the ends of an integral thin connecting strip, the connecting strip being in such form and so proportioned as to bend readily in use, and without such elasticity as to tend to draw the shanks from the wood; the metal of the fastener, at the points of junction of the connecting strip with the shank, being sufficiently heavy to receive the force by which the shanks are driven into the wood of a package in use."

The conclusion above expressed as to invention renders it unnecessary to consider the effect of the rejection by the patent office of the other two original claims (the one allowed was not amended), which did not contain the feature of an integral structure.

An attempt has been made to show prior public use in this country; the alleged anticipating devices being used to hold together the strips of wood constituting a tea chest. A card, marked "Exhibit J" containing four samples, has been introduced. Three of these, although crudely made, present every feature of the patented fastener, as enumerated in the above quotation from the testimony of the expert. If there were satisfactory evidence in the case to show that they had been in public use here at a sufficiently early date, they would defeat the patent. The first witness (Hamilton) called by defendant has been connected with the tea business in New York since 1885; prior thereto, in Glasgow, London, and Yokohama. He produced two samples similar to Exhibit J, which he had taken from tea chests in his possession, when he testified (1898). How long the tea chests had been here, does not appear. He testified that, ever since he had known of China teas, they came in chests fastened together by such clamps or staples. His testimony as to public use outside of this country, and as to any public use here subsequent to his going into business in New York, is, of course, immaterial. He further testified that he made occasional visits here in 1874 or 1875, and subsequent thereto, and his entire testimony upon the point in question is comprised in an answer to a single leading question, as follows:

"Q. 18. Were or were not fasteners such as Exhibit F [the samples he produced] in use on tea chests in this country which had come from China at the time of your first visit here? A. Yes."

The only other witness on this branch of the case was Mead. He had been connected with the tea business in this city for 25 years, and produced the samples, Exhibit J, which on September 23, 1898, he removed from a tea chest that had been in his possession for over 17 years. So far as appears, his attention had never been called to the fastenings of that particular chest till he removed them. He testified that, although he had been more or less familiar with pack-

ages of tea, he had not, during the period since he went into the tea business, been well acquainted with the method of securing the parts of tea packages together. During his connection with the business he had known of this fastener (same style as Exhibit J), and added, "During the period of my connection with the tea business, I have seen tea coopers use fasteners of somewhat similar make in coopering teas in this country;" but he failed to state at what stage of his connection with the business he first noticed this use of the Chinese staples, or even whether it was anterior to the application for the patent. The brief and fragmentary testimony of these two witnesses is unpersuasive, especially in view of the circumstance that no one whose business made him familiar with the chest, rather than with its contents, was called. The evidence of Mead indicated where the best witnesses on this subject were to be sought for, and their nonproduction would seem to require greater caution in accepting the statements of others. The infringing device of defendant is almost a Chinese copy of the fastener of the patent. It has two tapered, pointed shanks, at the ends of an integral connecting strip, which has been thinned, but not to such an extent as complainant's, and then split longitudinally. The thinning and splitting make it possible to bend the connecting strip readily, without leaving in it such elasticity as would tend to draw the shanks from the wood. The metal of the fastener at the points of junction of the connecting strip with the shank are sufficiently heavy to receive the force by which the shanks are driven into the wood; and the structure of the staple admits of its being driven into the wood so far that the ends will not project further than the flat and split portion. Infringement seems plain.

Application was made, after decision, for a rehearing, upon what was alleged to be newly-discovered evidence. The application was denied by the circuit court, on the authority of Baker v. Whiting, 1 Story, 218, Fed. Cas. No. 786, in which denial we entirely concur. The decree of the circuit court is affirmed, with costs.