CASTER SOCKET CO., Limited, v. CLARK et al.

(Circuit Court, D. Connecticut. September 20, 1901.)

No. 1,027.

1. PATENTS—VALIDITY—INFRINGEMENT—SOCKETS FOR FURNITURE CASTERS.
　　The Berkey patent, No. 318,533, for a socket for furniture casters, made in halves, one-half having an interior spring integral with the socket, and formed by the same operation, which engages with the bulbous head of the caster shank to prevent the same from dropping out unless pressure is applied, is of doubtful validity in view of the prior art, which discloses a socket identical in all respects except that the spring is made from a separate piece of metal, and riveted to the socket. If conceded validity, it is limited to the precise construction shown, and, as so limited, held not infringed.

2. SAME—DATE OF INVENTION—EVIDENCE.
　　An unsupported oral statement, made by a patentee many years after, is too vague and indefinite to carry the date of his invention back to a time prior to an application by another inventor, filed more than three years before his own, and covering substantially the same invention.

3. SAME—VALIDITY AND INVENTION—SOCKET FOR FURNITURE CASTERS.
　　The Denton patent, No. 594,937, for a socket or case for furniture casters, is void for anticipation. Also held not infringed, if conceded validity.

In Equity. Suit for infringement of patents. On final hearing.

Taggart, Denison & Wilson, for complainant.
Mitchell, Bartlett & Brownell, for defendants.

TOWNSEND, District Judge. The complaint alleges infringement of United States patents No. 318,533, dated May 26, 1885, to Julius Berkey, and No. 594,937, dated December 7, 1897, to Lemi B. Denton, both for sockets for furniture casters. Defenses are invalidity of patent, no capacity for conjoint use, denial of infringement. The object of these patents is to furnish a socket for furniture casters such that the casters, when inserted, will not drop out on lifting the article of furniture under which they are placed, but such that the casters can be readily removed by the use of slight force when desired. At the time of the issue of the Berkey patent it was common to make caster sockets in two separate halves. The specification of the Berkey patent describes the construction as follows:

"The socket is made in two parts, and when in use the two parts are put together so as to form the socket, and are driven into the opening in the furniture provided to receive the same. * * * A represents a half socket of iron or other metal, having the tongue, a, formed by casting the half socket and tongue in one piece, the tongue projecting or inclining inwardly, as

shown in Fig. 3. B is a half socket without the tongue, a, but having a ridge, c, and a depression, d, for holding the ball, C, of the caster shank. * * * The shank is in the ordinary form, except it is provided with the ball or enlarged portion, C, so as to be held in place by the springs or spring and ridge, c. Two of the half sockets A, when put together, form a complete socket, or the half socket A and half socket B are put together to form a complete socket."

The single claim is as follows:

"In a caster socket, the half socket A, provided with a tongue, a, integral with and formed of a part of the half socket A, substantially as and for the purpose described."

As appears by the description of this patent, the half socket has a spring made from the same piece with the socket, and integral therewith, projecting from the lower part of the socket upward and inward. The pintle or stem of the caster has a ball or enlarged portion at the upper end. When inserted in the socket, the ball presses the spring backward until it has passed the upper end of the spring, when the spring again inclines inward, and presses against the stem of the caster just below the ball; thus, when the piece of furniture is lifted, the caster is held in place by the pressure of the spring, but a firm pull by the hand upon the caster will suffice to overcome the force of the spring and remove the caster. When the half sockets A and B are used, the upper end of the spring combines with the ridge of the socket B to hold the ball, and thereby the caster in place; when the two half sockets A are used, the two springs combine their action with the same result. The specification of the Denton patent uses the term "caster case" instead of "socket." In this patent, the caster case or socket is made of one piece of metal, not divided in halves. The socket is open at the top, and split, or made with a slot, the split or slot extending a short distance from the top downward, the body of the case from the lower end of the slot to the track plate being made solid. The upper end of the case from the bottom of the slot upward is made somewhat smaller than the body of the case. The upper end of the pintle or caster stem is made bulbous shape. When the stem is pressed into the socket, the parts of the upper end of the socket on the different sides of the split or slot spring outward allowing the bulbous-shaped end of the stem of the caster to pass between and above them, when they spring back to their original position, and press against the stem below the bulbous-shaped part, thus holding the caster in place. As in the Berkey construction, so in the Denton construction, the caster will not drop out when the furniture is lifted; but a firm pull upon it will separate the parts of the socket adjoining the slots, and allow the caster to be removed. The single claim of the Denton patent is as follows:

"In a case for furniture casters, a solid body extending up for a distance from the track plate, the upper end contracted or made smaller and slotted down to the line of contraction so that it can be made to spring apart, and the end left open, so that the bulbous end of a caster stem may be forced through and supported by resting upon the end of the case, substantially as and for the purpose set forth."

The only substantial difference between the construction of the Berkey patent and that of Kane and Brown, No. 52,420, of 1866, is

that the spring of the Kane and Brown patent is riveted upon the interior of the socket, while that of the Berkey patent is integral with the socket. The essence of the claimed invention is this integral spring. This is squarely and frankly and repeatedly stated by complainant's counsel in their brief. Thus, after describing eight patents for the same purpose from 1854 to 1876, all of which they claim to have been unsuccessful, they say of the Berkey invention:

"He used a cast-metal socket of substantially the same form shown by several earlier patents. He used a pintle with a bulbous head of substantially the same form shown by several earlier patents. He used a spring engaging this bulbous head, and removably holding it in position. His improvement and his invention consisted, and consisted only, in making the spring integral with the socket, of the same material, and formed by the same operation, instead of making the spring of another material by separate operation, and then by a further operation attaching the two together. It is evident that greater simplicity, cheapness, and efficiency were thereby obtained. The patent is not a broad one in the sense that it was the first for its purpose; on the contrary, the margin of invention upon which it stands is narrow. We hope to convince the court, however, that this margin, though narrow, is ample."

The complainant's contention is that this invention of a spring integral with the body of the socket is so far forth a pioneer invention, and should be construed broadly so as to cover every form of socket having a spring integral therewith; and therefore that it covers the construction of the Denton patent, the Denton construction being a mere improvement on the principal or Berkey invention; and that each of these patents is infringed by the defendants. At the time of the issuing of the Berkey patent, springs integral with the main structure were well known to mechanics, and were commonly used in a great variety of arts. Under the ordinary application of the doctrine of equivalents, there could be no invention in substituting the Berkey spring for that of Kane and Brown. The terms of the claim apparently confine it to the particular construction shown. The "half socket A" apparently indicates the half socket shown in the drawing. This is closed over the top, and, until the use of the track plate came in, no other construction than one with a closed top was practicable. After track plates were introduced, the grip-neck construction, so called, having an open top, supplanted the prior constructions. Seemingly, the Kane and Brown construction would be much more likely to suggest to a mechanic the Berkey construction than the Berkey construction would be to suggest the Denton construction, or that used by the defendants. Moreover, if the Berkey claim be construed broadly enough to cover the construction of the Denton patent, it is anticipated by a construction shown in patent No. 217,-349, of 1879, to Donovan. The Donovan patent shows and describes a caster socket of which the lower part is solid and the upper part has a slit down each side. The caster pintle carries a flat button-shaped head, which passes through the socket, but is not of such shape that, after having been placed in position, it can be pulled back, as the upper ends of the two sides of the socket, after the pintle is in place, will close beneath this head, and, the under side of the head being flat, hold the pintle firmly. If used with a caster pintle like Denton's, having a bulbous head, it would constitute his exact device.

The claim of both patents, however, is for the socket as such, and not for a socket in combination with any form of pintle. Moreover, pintle heads shaped like those of the Berkey and Denton patents were well known. The Denton patent is anticipated by the Donovan patent above mentioned, and by the McElhiney patent, No. 485,706, which shows substantially the same construction, the upper ends of the sockets being contracted, and having splits or slots so that the sides may be caused to spring apart, and the bulbous-shaped head of the pintle be forced through. The application for the McElhiney patent was filed on July 25, 1891; the application for the Denton patent was filed on September 22, 1894. In a preliminary statement in an interference with one Wilmot, Denton stated that he had conceived the invention on or about June 1, 1891, and on or about that day made a crude model, and exhibited it to others, no drawing thereof ever having been made; that he reduced the same to practice by making several full-sized casters, and presenting them to others, on or about the 1st day of May, 1892. In his testimony in this case he testified generally that the statements of fact contained in said preliminary statements were true. This oral statement, made years after, is too vague and indefinite to support a finding of invention previous to July 25, 1891, in view of the fact that his application for a patent was actually filed upwards of three years subsequent to McElhiney's.

Again, in view of the prior art, the Denton patent must be held to cover only the precise construction shown. In the patent office the application was rejected upon McElhiney, No. 498,444, and Diss, No. 436,307. Thereupon Denton inserted in his claim the limiting words "solid body," and in the specification stated, "The body of the case from the lower end of the slot to the track plate is made solid, so that there can be no danger of the sides being forced out of place and lap by each other." The examiner rejected the application, however, and on appeal the examiners in chief held that the making of the body of the case below the slot solid was patentable, saying, "The difference is between a socket which has a solid body and one which has a yielding body." Defendants' socket is made by rolling a sheet of metal into the form of a tube. Thus there is an open seam at one side of defendants' socket, and it is a yielding body, rather than a solid body, and therefore is not within the claim in the sense in which it was construed by the examiners in chief when allowing it.

The complainant, however, insists that the Berkey invention was successful in producing a result sought for many years; that his patent revolutionized the caster business; that a vast amount of furniture now embodies one or both of the patents in suit; that the public have acquiesced; and that, under the rulings in the Barbed-Wire Case, 143 U. S. 282, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, and in Acme Clasp Co. v. Cary Mfg. Co., 41 C. C. A. 338, 101 Fed. 269, it was this commercial success which decided the questions in favor of the inventor, and that the same rule should be followed in this case. The evidence is very meager as to the number of sockets manufactured of the construction shown in the Berkey patent. Other improvements, business ability and push, and the use of sheet metal

seem to have contributed very largely to the increased sales; and it is by no means clear that any considerable number of articles made according to the specifications and drawings in the patent were ever in actual use. The improvements which led up to the socket now manufactured seem to have consisted in choosing from known mechanical devices, and using those best adapted for the purpose, rather than in actual invention. By means of the integral spring, as shown in the Berkey patent, greater simplicity, cheapness, and efficiency may have been obtained, as claimed by the complainant. Undoubtedly, these advantages were produced by later improvements, but, in view of the prior art, and in the absence of evidence as to the particular form of the sockets made during the earlier part of the period covered by the testimony, and with the forms of the sockets as to which the only definite evidence is produced differing widely from that shown in the Berkey patent, the precedents cited cannot determine the issue against the ordinary rules of mechanical equivalents in patent causes.

Defendants introduced in evidence a very large number of patents and other evidence illustrating the prior art. Even if the patents above particularly referred to had not been offered, it is very doubtful if either of the patents in suit could be sustained. The validity of the Berkey patent is doubtful, and, if valid, it is not infringed. The Denton patent is invalid, and, if valid, is not infringed. The Berkey patent should not be so construed as to cover the construction of the Denton patent, and these patents are not capable of conjoint use. Let the bill be dismissed.