### GEORGE FROST CO. et al. v. COHN et al.

#### (Circuit Court, S. D. New York. December 31, 1901.)

1. PATENTS—INVENTION—SUBSTITUTION OF MATERIAL.

The use of one material, instead of another, in the construction of a known article or machine, amounts to invention, where the substitution accomplishes a new and useful result, an increase of efficiency, and a saving in operation, and renders the article for the first time successful and satisfactory in operation.

2. SAME—INFRINGEMENT—HOSE SUPPORTER.

The Gorton patent, No. 552,470, for a hose supporter, the essential feature of which is the substitution in the construction of the clasp of a button made of rubber or similar material for the metal button of the prior art, was not anticipated, and discloses invention, in view of the marked superiority of the article as so constructed. Claim 1 also *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

This action is for the infringement of letters patent No. 552,470, granted to Robert Gorton, December 31, 1895, for a hose supporter. The patent is now owned by the complainants.

The inventor says in the specification:

"My invention relates to hose supporters of the class in which the hose is held between a button and a retaining-loop that passes over the button and the intervening portion of the hose. The purpose of my invention is to prevent the slipping of the hose between the button and loop and to reduce to a minimum wear of the hose and liability of breaking or tearing them. To this end I employ a button having a fibrous yielding or elastic surface to which the garment tends to cling, as distinguished from the metallic surfaces heretofore generally used, or a button made of such material, and I preferably make it of rubber or other homogeneous material possessing similar characteristics adapting it to the purposes of my invention. In the ordinary form of supporters the button has a shank that is riveted or otherwise secured to a base-plate. In such supporters the shank only of the button may have such a characteristic surface or body, since the surface of the shank directly co-operates with the loop to hold the hose—that is to say, the hose is clamped between the shank and the end of the loop—and if the clamping-pressure be a yielding or elastic one at such point the advantage of my invention will to a great extent be obtained. I prefer, however, the entire head or edges of the head of the button shall be of the same material as the shank, because the hose will cling to it and further reduce liability of slipping and wear. The ordinary flat metal loop that has an opening large at one end and narrower at the other may be employed; but to further improve and perfect my supporter I make the metal loop with smooth or rounded edges. I may, for instance, make the loop of flat wire, or I may, and as I prefer, cut the blank for the loop from sheet metal, and then turn or spin over its edges. This construction further reduces wear and liability of tearing the hose, and at the same time there is no danger of the hose slipping between the loop and button, because the material of the button

is of such character that the hose clings to it, nor will the loop in use become disengaged from the button. Since the shank has a yielding or elastic surface, I may constrict the opening in the loop near its clamping end, so that some slight strain upon the loop is required to draw the constricted part past the button. This in effect locks the loop and prevents its accidental displacement in use. * * * In my improved device, as before stated, the head as well as the shank of the button may be made of elastic or yielding material. My construction provides a cushion against which the hose is pressed by the strain of the loop, and there is no liability of the loop cutting the hose or becoming unfastened, as is the case in ordinary supporters, where the fastening-surfaces are all of metal, nor is there danger of the head being forced through the stocking, which may occur when the head is metallic and the stocking thin. The rubber used in my supporter may be as elastic or yielding as that ordinarily employed for pencil-erasers; but it may be either softer or harder. I prefer that it shall be of about the grade mentioned. Rubber is the material best suited to my purpose, so far as I am aware; but when I use that term in the claims I intend to include as an equivalent any other material adapted to prevent the button from slipping and having characteristics similar to rubber and adapted to the same use."

The first claim is the only one involved. It is as follows:

"(1) In a hose supporter, the combination of the webbing, the loop having an opening large at one end and narrower at the other, the button supporting plate, and the button composed of the central support and the surrounding rubber portion, substantially as set forth."

The defenses principally relied on are—First, lack of invention; and, second, anticipation by the English patent to Henry M. Knight, of November 9, 1888, that being the date of the completed specification. Smith v. Vulcanite Co., 93 U. S. 486, 498, 23 L. Ed. 952. The defense of noninfringement is argued in the defendant's brief, but it rests upon a forced, restricted, and unnecessary construction of the claim. That the defendants infringe is thought to be too plain for argument. Abandonment is also suggested, but the evidence is insufficient to support the defense.

Frederick P. Fish, A. D. Salinger, and Charles Neave, for complainants.

J. Edgar Bull, for defendants.

COXE, District Judge (after stating the facts). The crucial question is one of invention. It is argued by the defendants that Gorton's sole contribution to the art was the substitution of a rubber button for the metal buttons previously used, and that this was merely a change of material involving only mechanical skill. Conceding that the defendants' diagnosis of the issue is somewhat severe in lopping off the other members of the combination, nevertheless the court sees no way to escape the conclusion that the fate of the patent depends upon the effect of the introduction of the rubber button into the old structures. Did this involve invention? Assuming that the case involves a change of material and nothing more, how stands the law?

In Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852, Mr. Justice Bradley states the rule as follows:

"The use of one material instead of another in constructing a known machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called an invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained."

Gorton's achievement is clearly within the exception and combines the three alternative essentials there stated. His supporter attains a new and useful result, an increase of efficiency and a saving in operation. The case of Hardware Co. v. Selchow, 112 Fed. 1006, presents an excellent illustration of a change of material which is obviously within Mr. Justice Bradley's rule. If Gorton's device possesses no distinguishing characteristics except that it is lighter, cheaper and stronger than the devices which preceded it the court would have no hesitation in declaring the patent invalid. But the proof shows that the Gorton clasp was the first perfectly successful and operative supporter ever made. There were in the prior art clasps which supported and clasps which did not tear the stocking, but the clasps which supported tore the fabric and the clasps which did not tear failed to support. In other words, only ragged stockings were kept in place. A woman who was ambitious to have her hosiery intact was liable to find it slouching about her heels. It seemed impossible to secure a supporter that would adapt itself alike to thick and thin stockings. If it succeeded in holding the former the latter would slip from its embrace. For years an army of inventors and skilled mechanics were at work to remedy these defects. All sorts of expedients were resorted to, but the old difficulties remained. At length Gorton substituted for the metal button a button with a rubber shank, and the thing was done. This, the defendants insist, was a perfectly obvious thing to do. Every one who wore goloshes, or rode a bicycle, or placed a band around his papers, or played golf or tennis knew the properties of rubber. There was not an intelligent mechanic who did not know that rubber is more resilient and clinging and less likely to cut woven fabrics than steel or iron.

Here was a situation, say the defendants, where a hard, unyielding substance had been tried and found wanting and where a soft, gripping substance was needed in its place. Rubber possessed all the required qualities and everyone knew it. What then was more natural than to use rubber? This argument has been so often considered by the courts that little of value can be added to the discussion, and, after all, the old answer is the best answer,—"No one did it before." The record shows that for at least ten years prior to Gorton's invention men skilled in the art were endeavoring to make an operative supporter and several had so far succeeded as to secure patents, but always along the same lines. There was always the metal button, there was always the fabric clamped between two metallic surfaces. Rubber, in almost every conceivable shape and form, was everywhere in use, but no one thought of it. Like a jewel lost in a crowded thoroughfare,—multitudes pass it unnoticed, some actually tread upon it, others stop and gaze for a moment, but hurry on deeming it some worthless tinsel; at last comes one who recognizes its value and picks it up. Others might have done this it is true, but they did not; he did, and is entitled to the prize which he has rescued from the mire. If one should attempt to snatch the gem from the finder on the ground that he passed it frequently and could have picked it up as well as not, he would in all probability be

promptly turned over to the police as a thief or a lunatic. It is this capacity for accomplishing results, this faculty of seeing what others fail to see and hearing what others fail to hear which has always distinguished success from failure and the inventor from the mechanic. "In the law of patents it is the last step that wins," says the supreme court. This is the step which Gorton took.

The utility of the invention is attested by the fact that the Gorton supporter, though higher in price, at once became popular with the trade, the demand increasing with each succeeding year. The public has quite generally acquiesced in the validity of the patent and although there are still a few infringers they do not represent the responsible portion of the trade. The tenacity with which these infringers, while asserting the equal efficiency of the metal button, stick to the rubber button, and the desperate and dishonorable, not to say criminal, methods adopted by some of them to defeat the patent, bear eloquent testimony to the importance and utility of the invention. It seems hardly necessary to say that the defendants at bar and their counsel are entirely blameless of wrongdoing, and indignantly repudiated the attempted fraud the moment it was discovered. It is thought that Gorton's achievement, though by no means a great one, was yet one which marks a distinct advance in the art and should be sustained as an invention within the rule of the following authorities: Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586; Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294; Acme Flexible Clasp Co. v. Cary Mfg. Co., 41 C. C. A. 338, 101 Fed. 269; Brunswick-Balke-Collender Co. v. Thum (C. C. A.) 111 Fed. 904; Hallock v. Davison (C. C.) 107 Fed. 482. and cases cited.

It is unnecessary to decide whether or not the Knight patent would anticipate if prior to Gorton's invention, for the reason that the earliest date which can be assigned to that patent is November 9, 1888, and Gorton's invention was several months prior to this date. The Knight specification contains the following memoranda:

"Date of application, 10th Feb., 1888. Complete specification left, 9th Nov., 1888. Complete specification accepted, 31st Dec., 1888."

The date when the patent was sealed and enrolled does not appear, but it is stated that it was sometime in 1889. In Siemens' Adm'r v. Sellers, 123 U. S. 276, 8 Sup. Ct. 117, 31 L. Ed. 153, Mr. Justice Bradley, at page 283, 123 U. S., page 118, 8 Sup. Ct., and page 155, 31 L. Ed., referred to the sealing of an English patent as the date of its publication and in another case an English patent was considered by him as dating from the time of the enrollment. Elizabeth v. Pavement Co., 97 U. S. 126, 130, 24 L. Ed. 1000. As the complainants have, apparently, conceded the date of the Knight patent to be November 9, 1888, it is not necessary to decide whether they might not properly insist upon a date several months later.

The uncontradicted evidence proves that Gorton conceived the invention and made an illustrative sketch and a device embodying its essential features during the spring of 1888. The file wrapper shows that when the Knight patent was cited against him he presented similar proofs. His testimony is corroborated by a number of witnesses

who were sworn in the proceedings in the patent office and also by the drawings there produced. One of these sketches which clearly shows the invention has the office stamp of its receipt by Gorton's attorneys, "April 13, 1888," plainly appearing thereon. Another improved sketch was dated April 25, 1888. Also in the spring of 1888, Gorton made a working clasp showing the invention and exhibited it to several witnesses. This device was before the patent office officials in the interference proceeding and is in evidence here. A strong case anticipating the Knight patent is thus presented. It is impossible that the witnesses are mistaken as to the salient features, corroborated as they are by memoranda made at the time. A similar situation was considered by this court in Bliss v. Merrill (C. C.) 33 Fed. 39, and what was there said is equally applicable here.

It follows that the complainants are entitled to a decree for an injunction and an accounting, with costs.