## STROM MANUF'G CO. v. WEIR FROG CO.

### (Circuit Court of Appeals, Sixth Circuit. November 1, 1897.)

1. PLEADING IN PATENT CASES—DEMURRER TO BILL.
    When the case as presented is clear, and the court finds no difficulty in understanding the character and scope of the invention from the patent itself when tested by the common knowledge pertaining to it, and thereupon discerns that the patent is not sustainable, the proper course is to dispose of the case on demurrer, and thus put an end to useless litigation.

2. PATENTS—NOVELTY AND INVENTION—SUBSTITUTION OF MATERIALS.
    The substitution of one material for another, especially of kinds so intimately allied as those of cast and wrought iron or steel, involves no invention, nor are the products thereof patentable for the reason that one may possess greater advantages than the other.

3. SAME—RAIL BRACES.
    There is no patentable invention in swaging, or striking up by means of a die from a blank of malleable iron or steel, a rail brace of a form which had previously been made of cast metal.

4. SAME.
    The Alkins patent, No. 352,286, for improvements in the manufacture of rail braces used on railroad tracks, is void for want of invention.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This was a suit in equity by the Strom Manufacturing Company against the Weir Frog Company for alleged infringement of the Alkins patent, No. 352,286, for an improvement in rail braces. On a demurrer to the bill, the circuit court held that the patent was invalid on its face for want of patentable invention, and accordingly entered a decree dismissing the bill. 75 Fed. 279. From this decree the complainant has appealed.

Philip C. Dyrenforth and Geo. S. Baily, for appellants.
Wood & Boyd, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge. The bill of complaint in this case charges the defendant with infringing certain letters patent issued November 9, 1886, to Charles Alkins, being No. 352,286, for new and useful improvements in the manufacture of rail braces used in the construction of railroad tracks, more especially about switches and curves in the track where the side pressure of the wheels of cars moving on the track is greatest. The rights secured by these letters

patent were subsequently assigned to the complainant. The bill is in the usual form, and prays not only for an injunction, but for an accounting. The specifications of the patent relate to a rail brace or support "struck up by dies from a blank plate of wrought or malleable iron or steel, in such a manner as to convert the blank into a suitable base provided with a hollow abutment adapted to engage the side of the rail in order to effectively brace the same." The objects of the invention, as stated in the specifications, were:

"First. To produce at a reduced cost and in a more convenient way a rail brace possessing in a high degree both strength and durability, and involving all of the advantages without the disadvantages of the old construction of rail braces.

"Second. To rapidly and economically produce a rail brace possessing all of the necessary features of strength, durability, and adaptability to its destined purpose, and at the same time involving the employment of considerably less metal than in the old construction of brace, whereby a saving in material is effected and the cost of production lessened, without weakening or otherwise detracting from the serviceability of the brace.

"Third. To effect a considerable lessening of the time and labor heretofore incident to the manufacture of rail braces, thereby reducing the cost of their manufacture, and permitting large orders to be filled rapidly."

The claims founded on the specifications are 11 in number, the first 5 of which relate to the art or process of manufacturing such braces, the sixth, seventh, and eighth to the blank piece of metal appropriately formed and trimmed on which such rail braces are constructed, and the ninth, tenth, and eleventh to the rail brace itself as formed.

The defendant demurred to so much of the bill as is founded upon claims 1, 2, 3, 6, 9, and 10 of the patent, upon the following grounds:

"(1) That said bill does not contain any matter of equity whereon this court can ground any decree or give to the plaintiff any relief against this defendant on account of said claims 1, 2, 3, 6, 9, and 10 of said patent.

"(2) That the alleged improvements specified in said claims were not new and patentable at the time of the alleged invention thereof, inasmuch as before that time it was the common and general knowledge of the public, of which the court will take judicial notice, that the art of striking up metal blanks into hollow articles was old; that the shape of the article produced depended on the form of the dies used; and that it has been held not to be invention to change the form of a die so as to make a new-shaped article under it.

"(3) That cast rail braces of the character and form of the patented one, with solid abutments, being admitted by said bill to be old before the date of the alleged invention, it is not shown by said bill that there was any invention in making the abutment hollow, that being a well and generally known result of the common practice of the art of striking up metal into any hollow form, of which the court will take judicial notice, and no special or other means than the public possessed is described in said patent for the accomplishment of this result."

To so much of the bill as relates to the other claims, the defendant answered, denying that the matter of the invention was new and useful, and further denying that the patentee was the first inventor thereof. The answer also insisted that, in view of the state of the art at the time of the alleged invention, "the subject of the last-mentioned claims did not involve invention." After the lapse of several months, the complainant set the demurrer down for hearing, and filed a replication to the answer; the defendant at the same time mov-

ing for the dismissal of so much of the bill as was covered by its answer. No proofs were offered within the time prescribed by the rules, nor at any time, in support of that portion of the bill which the defendant answered. Upon the hearing of the case in the court below, the demurrer was upheld, upon the ground that no invention was displayed in the supposed improvement set out in the patent. The bill was dismissed, and the complainant has appealed. No criticism is made upon the action of the court in the dismissal of the bill in respect of the claims to which the answer was directed, and the appeal as presented to us by counsel challenges only the decision of the court in sustaining the demurrer, which concerns the first, second, third, sixth, ninth, and tenth claims of the patent.

In support of the appeal it is first contended that the court erred in disposing of the case made by the bill on demurrer. It is claimed that this course was too summary, and that the justice of the case could have been better subserved by awaiting the proof and obtaining the aid of those conversant with the art in elucidation of the matter of the invention. But it is no longer open to question that where the case as presented is clear, and the court finds no difficulty in understanding the character and scope of the invention from the patent itself when tested by the common knowledge pertaining to it, and thereupon discerns that the patent is not sustainable, the proper and expedient course is to dispose of the case on demurrer, and thus put an end to useless litigation. Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745; Richards v. Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831; American Fibre Chamois Co. v. Buckskin Fibre Co., 37 U. S. App. 742, 18 C. C. A. 662, and 72 Fed. 508.

The proper course to be pursued when a question of the propriety of such action is presented was stated by Judge Taft in delivering the opinion of the court in the case of American Fibre Chamois Co. v. Buckskin Fibre Co., 37 U. S. App. 742, 18 C. C. A. 662, and 72 Fed. 508, thus:

"The rule is now well settled that a defendant to a patent infringement bill may raise the question, on demurrer, whether the alleged invention, as disclosed by the specification of the patent, is devoid of patentable novelty or invention. Richards v. Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831; West v. Rae, 33 Fed. 45. It is also well settled that, in considering the question of the validity of a patent on its face, the court may take judicial notice of facts of common and general knowledge tending to show that the device or process patented is old or lacking in invention, and that a court may refresh and strengthen its recollection and impression of what facts were of common and general knowledge at the time of the application for patent by reference to any printed source of general information which is known to the court to be reliable, and to have been published prior to the application for the patent. Brown v. Piper, 91 U. S. 37. The presumption from the issuance of the patent is that it involves both novelty and invention. The effect of dismissing the bill upon demurrer is to deny to the complainant the right to adduce evidence to support that presumption. Therefore the court must be able, from the statements on the face of the patent, and from the common and general knowledge already referred to, to say that the want of novelty and invention is so palpable that it is impossible that evidence of any kind could show the fact to be otherwise. Hence it must follow that, if the court has any doubt whatever with reference to the novelty or invention of that which is patented, it must overrule the demurrer, and give the complainant an opportunity by proof to support and justify the action of the patent office."

Many of the cases in which this subject has been considered were cited in that opinion, and they clearly demonstrate the correctness of the views entertained by the court as expressed by the foregoing extract.

Undoubtedly, if there appears upon the face of the patent something inhering in the substance of the invention which is recondite or abstruse, something which creates a difficulty for the court in fully comprehending its nature or its limitations, and the court, upon applying the common knowledge of the art, is embarrassed with doubt as to the proper conclusion to be reached, such difficulty, re-enforced by the presumption of the validity of the patent, would indicate the propriety of refusing to dismiss the bill upon demurrer, and awaiting the further development of the invention by the proofs. But we do not think that such a case is presented here. The specifications and claims are readily comprehensible, and no person ordinarily skillful, and having the ordinary instruction of those employed in the exercise of the art, could fail to understand all there is in this patent. There is no suggestion of anything in it which is obscure, and there is no profit in waiting for light where none is needed.

The first three claims relate to the art or process of manufacturing rail braces, and are as follows:

"(1) The improvement in the art of manufacturing rail braces consisting in striking up a metal blank into a higher abutment arising from a base, with its front or abutting end and said base shaped to the portions of the rail against which the base is to bear, substantially as described.

"(2) The improvement in the art of manufacturing rail braces consisting in striking up between the two opposite side edges and at one end portion of the metal blank a hollow abutment, with its front or abutting end shaped to the portions of the rail against which it is to bear, substantially as described.

"(3) The improvement in the art of manufacturing rail braces consisting in forming an oblong metal blank, widening towards one end, and striking up a length of the wider portion of said blank into a hollow abutment, with its front or abutting end and the material left as a base shaped to the portions of the rail against which the base is to bear, substantially as described."

There are minor variations in the expression of these claims, but these variations are unimportant in the view we take of them; and, for the purposes of decision, we shall give the invention covered by them credit for all that is contained in any of the three.

It is contended on behalf of the defendant that the improvement in the art which the patentee claims to have produced by his invention is not sufficiently described to comply with the statute (Rev. St. § 4886), which provides that the description thereof must be in such terms as to enable any person skilled in the art to make and use it. Upon first thought this objection would seem to have force, but Judge Sage, who heard the case in the court below, referring to the opinion of this court in Kilbourne v. W. Bingham Co., 6 U. S. App. 65, 1 C. C. A. 617, and 50 Fed. 697, answered, in substance, that the process of swaging was itself very old, and that any skilled person would know from the drawings and specifications how to strike up the metal into the form of a rail brace. And, indeed, we do not think it can be doubted that the form of the article to be produced being given, and the material with which it was proposed to make it stated, it would be quite an elementary operation for an experienced metal

worker to construct the rail brace of the patent. As the patentee describes no special process, the only process which can be implied is the old one, which the common experience of those employed in such pursuits would suggest.

But the implication of the exercise of the common skill of the art which must indispensably be carried into the claims in order to save them as sufficiently descriptive is fatal to their validity, for the striking up of the rail brace from a plate of metal, which the patentee claims as his improvement in the art, is thus shown to be nothing else than the old process of making such forms by means of hammers, stamps, dies, and swages, or other tools familiar to operatives skilled in working with them. It belongs to one of the earliest of the arts, and its history reaches back to the myths of antiquity. It is unnecessary for us to decide whether the process is sufficiently described in these claims; for, if it is, it is only by an implication of the pre-existing art, which would demonstrate that nothing was invented.

Claim 6 is as follows:

"(6) The blank, A, for a rail brace, widening towards one end, substantially as described."

This is for the constructed article, and not for the art of constructing it. All suggestions, therefore, about the economy of constructing the blanks by cutting them off widthwise from a strip of a plate of metal, so that the wide and narrow ends of the plate shall alternate, and thus utilize the whole of the metal, are irrelevant. Besides, it is an economy obvious to the common understanding, and in very common practice in manufactures of various kinds. As to blanks cut in this way, wider at one end than at the other, to the end that, when "struck up," they shall conform to certain requirements, there is nothing new in these. Pieces of cloth to be made up into garments, as, for example, the parts intended for sleeves, exhibit this form of construction. The pieces of leather cut to make the front portion of the uppers of boots afford a pertinent illustration. Such forms are the result of mere experiments of "cutting and trying" or of reducing to a flat surface an article having the desired conformation. This is not invention. The matter is too clear to warrant prolonged discussion.

The ninth and tenth claims are not essentially different from each other, and are for the manufactured article, the rail brace. They are these:

"(9) A struck-up metal rail brace, having a hollow abutment rising from a base, substantially as described.

"(10) The struck-up metal rail brace, formed with the hollow abutment, 3, rising from a base, 4, substantially as described."

The patentee concedes that iron rail braces cast with solid abutments, but otherwise of the same form, were already in use; but he claims certain advantages from using wrought or ductile metal. The advantages which he supposes to exist are those which economize the work of production in the saving of material and labor. It is not claimed that his rail brace possesses greater strength and durability than those in use, but he says they can be produced in a more advantageous way by his method with ductile metal, instead of by cast-

ing them in the old form. But the substitution of one kind of material for another, especially of kinds so intimately allied as those of cast and wrought or malleable iron or steel, is not of the character of invention, nor are the products thereof patentable for the reason that one may possess greater advantages than the other. Kilbourne v. W. Bingham Co., supra, and the cases there cited upon this point. And see, also, Hoff v. Manufacturing Co., 139 U. S. 326, 11 Sup. Ct. 580. No doubt, there are exceptions to the general rule, but they depend upon special facts indicating the presence of more genius or invention than is exercised by the ordinary skill and knowledge of those familiar with the qualities of materials and their various adaptations in the useful arts. The principle on which such exceptions rest was explained in Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, which has become a leading case on this subject.

This patent was issued in 1886. Before that time the substitution of wrought or malleable metals for other metals had been made in a multitude of common instances. It was shown extensively in culinary utensils and in many of the industrial arts. That the products of swaging ductile metals might be lighter and require less material, that they would be less liable to break, and might be made with less labor, was known to everybody. The patent in question does not in this respect stand on better ground than did the Kilbourne patent in the case of Kilbourne v. W. Bingham Co., already referred to. In that case Kilbourne claimed to have invented a sink to be used in kitchens and similar places. Cast-iron sinks of like form had been in use before, but the patentee claimed that he had devised a better one, which he produced by striking up a blank of wrought or malleable metal into the required form, and that it possessed certain advantages over the old cast-iron sink, which he enumerated thus:

"My invention consists of a sink swaged or struck up from a single sheet of wrought iron or steel, without joint, seam, or interior angle."

He then set forth various defects in sinks made of cast metal, saying:

"Sinks of this kind are neither strong nor durable. They break easily and frequently in shipping or in storing them, and also in placing or setting them up in position for use. They are also liable to fracture or break if water should freeze in them, and, in order to give them the modicum of strength which they possess, a considerable amount of metal must be used in their construction, making them cumbersome and heavy, and increasing expense of manufacture."

He gave this description of his invention:

"I have discovered that the above-specified defects can be completely removed by making the sink of wrought iron or steel, said sink being swaged or struck up from a single sheet of such metal, as hereinbefore first specified. Such a sink is, of course, stronger than one of cast metal, and is not liable to be fractured or broken by a sudden jar or blow. It is cheaper than a cast-metal sink, for the reason that much less metal is required in its construction; and it can, by the swaging operation,—as, for instance, by being struck up in a drop press,—be made more rapidly and economically. * * * The sink, being, as seen in the drawings, without interior angle, has practically equal strength at all points, and has no corners where sediment or dirt can gather."

The objects thus sought by his improvements were very similar to those claimed by Alkins in his specifications for the patent in the case before us. They were simply the result of substituting one well-known material for another, and applying one well-known process for another, the latter being necessarily suggested by the use of ductile metal. In the court below, the bill was dismissed (47 Fed. 57), and on appeal the decree was affirmed by this court in an opinion delivered by Judge Swan, who cited many instances of like operations and like substitutions and products in the old art. Many of these, perhaps all, were in the proofs in that case, but a good number were instances in common knowledge and observation, and needed no proof.

The suggestion that the abutment of the complainant's rail brace is hollow, and therefore lighter, is only of the form it would necessarily take from the process of swaging adopted in making it. The patent does not claim that the mere openness of the abutment is of any advantage, or indicate any reason why it should be accounted as such. We quite agree with the court below in thinking that none of the claims in question are sustainable. The result is that the decree will be affirmed.