DRAKE CASTLE PRESSED STEEL LUG CO. et al. v. BROWNELL & CO.

(Circuit Court of Appeals, Sixth Circuit. June 2, 1903.)

No. 1,156.

1. PATENTS—INVENTION—SUBSTITUTION OF MATERIALS.
    The substitution of steel or wrought iron for cast iron as the material from which a structure is made does not constitute patentable invention, although such change of material also involves a change in the method of construction and in form, the new article being stamped or swaged from a single sheet of metal, where when made it performs the same functions in substantially the same way, its only advantage over the old structure being attributable to the inherent qualities of the material used.

2. SAME—BOILER LUGS.
    The Drake patent, No. 491,091, for a boiler lug, stamped or swaged from sheet metal, is void on its face for lack of patentable invention; the structure of the patent differing from the cast iron lugs previously used only in the material of which it is made and somewhat in form.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This is a bill to restrain infringement of patent No. 491,091 for alleged improvements in supporting lugs used for the support of boilers.

The patentee thus describes his invention: "Prior to my invention boiler lugs have been constructed of cast metal. These lugs are necessarily heavy, and a single lug for a standard boiler, say five feet in diameter, would weigh at least one hundred pounds. In applying them to a boiler, the only way in which a tight joint can be secured is by heading the rivet over from the inside of a boiler. It is of course well known that boiler plate and cast iron have different rates of expansion and contraction, and a suitably tight joint cannot easily be secured or maintained between these metals of diverse na-

¶ 1. See Patents, vol. 38, Cent. Dig. § 23.

ture.  A cast metal lug is provided in the casting with the bolt or rivet appertures, and, necessarily, their position being fixed, the rivet holes in the boiler must be made to correspond.  Accuracy of fit between a surface of a lug and the surface of a boiler is difficult to attain where the lug is cast.  The further objection to cast boiler lugs arises from the fact that a power riveting machine cannot be used to rivet them on.  A strain on these lugs is mainly at the angle between the upright and the horizontal members, the bracket being substantially L shaped.  In order to secure the proper strength at this point these lugs are necessarily made heavy.  In a patent issued prior to my invention, a boiler lug has been shown having its members reinforced by ribs or flanges upon the interior angle of the lug and along its side margins.  Said flanges, however, extend only partially up the sides of the vertical member and part way only along the top surface of the horizontal member of the lug.  If a cast lug were provided with side flanges or webs sufficient to secure such additional strength as would permit a material reduction in the weight of a lug, these flanges would have to be so thick that the interior space for riveting would be encroached upon, and if the rivet holes are put too close together they weaken the lug.  It is the object of my invention to avoid all of the objection above pointed out; and to this end I construct a boiler lug from sheet metal, preferably sheet steel, by pressing, stamping, or rolling it to produce a lug having the necessary upright and horizontal portions, and in the same operation I turn up the side margins of the blank so as to provide the lug upon its interior angle with marginal ribs or flanges of such width as to properly brace and integrally connect the two portions of the lug."  The bill was demurred to upon the ground that the patent did not on its face show a patentable invention.  The demurrer was sustained, and the bill dismissed.

Charles K. Offield, Henry S. Towle, and Charles C. Linthicum, for appellants.

R. J. McCarty, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

LURTON, Circuit Judge (after stating the facts).  A boiler lug is nothing more or less than an L-shaped iron bracket, one member being attachable to the side of a boiler and the other to a wall or floor or other upright support, and its only function is to support the boiler in place.

It is elemental in the patent law that the mere substitution of steel or wrought iron for cast iron is not invention.  The advantages and differences of the two forms of iron are too well known to require the skill of an inventor to displace the one for the other, where the conditions are such as to make one preferable to the other.  Kilbourne v. Bingham Co., 50 Fed. 697, 1 C. C. A. 617; Strom Mfg. Co. v. Weir Frog Co., 83 Fed. 170, 27 C. C. A. 502; Union Hardware Co. v. Selchow (C. C.) 112 Fed. 1006; Florsheim v. Schilling, 137 U. S. 64, 76, 11 Sup. Ct. 20, 34 L. Ed. 574; Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852.

In Hicks v. Kelsey, cited above, the rule is stated as follows:

"The use of one material instead of another in constructing a known machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained."

But it is said that the change of material involved also a change in the method of construction, and that the lug of the patent can be stamped or swaged out of a single sheet of plate of suitable shape, with supporting ribs or flanges integral with the other members, and that the lug thus made is lighter and cheaper and stronger than the cast iron lug which it has superseded, as shown by the averments of the bill. It is said also that the new lug has "the same coefficient of expansion as the boiler, and therefore the new function of expanding and contracting therewith," with the new result of making a closer connection and a tighter joint between them, and that the new lug also has "the new capability of conformability, accurate fit, and supporting connection." But it cannot be seriously pretended that because a lug made of a malleable metal will fit more closely to the side of a boiler than a rigid nonmalleable cast iron support that we have a new function, or that because the expansion of the steel lug will equal the expansion of the wrought iron or steel boiler, to which it is attached, that the lug of the patent is capable of performing a new and useful function over a cast iron lug. The new lug does just what the old lug did. That it is lighter, cheaper, and more durable, in that it preserves its attachment more closely, and is less liable to fracture, may be conceded. But, after all is said, it remains that it performs the precise function of the old cast iron lug, in substantially the same way, and it is idle to deny that every advantage which is claimed for it over the old lug is attributable to the inherent qualities of sheet steel over cast iron when used for a boiler supporting lug.

To sustain a patent based upon a change of material, it must be shown that some new and useful result has been accomplished; for it is only then that the substitution of one material for another can attain the dignity of invention. From the case of Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, this principle has been adhered to. The case of Union Hardware Co. v. Silchow (C. C.) 112 Fed. 1006, and George Frost Co. v. Cohn (C. C.) 112 Fed. 1009, both decided by Judge Coxe, afford illustrations of the difference between a mere improvement resulting from a change of material and the accomplishment of a new and useful result as a consequence of such substitution. "Both," said Judge Coxe, "involve a change of material in existing structures; but in the one instance the skate operates after the change precisely as it did before, and in the other a hose supporter which does not support is converted, by the change, into a hose supporter which does support. In the former case, by the use of cheaper, lighter, and stronger metal, the skate is made cheaper, lighter, and stronger; in the other, the substitution of a rubber button for a metal button transformed a destructive and inoperative device into a highly successful one."

The structural changes in shape and form accomplish no new result. Most of them are purely incident to the change in material. The ribs or flanges upon the interior angle and along the side margins of the two principal members, as well as the extension of the vertical member so that a part thereof shall extend below the plane

of the horizontal member, are common devices for bracing a bracket intended to support an object, and quite within the range of knowledge attributable to any one having an ordinary acquaintance with the laws of mechanics.

Like devices were used even in the old lug, for the patentee states in his specifications that in a patent prior to his own a boiler lug is shown "having its members reinforced by ribs as flanges upon the interior angle of the lug and along its side margins," but that said flanges "extend only partially up the side of the vertical member and part way only along the top surface of the horizontal member of the lug." What the patentee has done in this direction is but an extension of the old bracing method of the patent he refers to. The fact that these bracing ribs and webs are made integral with the principal members of the lug, and the whole struck or stamped out of a single sheet of metal, does not constitute the constructed article patentable, even though the machine which made it might possess features entitling it to a patent. The art of swaging is old, and the articles struck from a blank which are made in that way are very numerous. The mere fact, therefore, that the lug of the patent may be made in that way, and thus possess the advantage of having no joints or seams, does not display invention.

Our own cases afford at least two illustrations much in point. In Kilbourne v. Bingham Co., 1 C. C. A. 617, and 50 Fed. 697, the patent was for a sink, swaged or struck up from a single sheet of wrought iron or steel, without joint, seam, or interior angle. We held there was no invention in the entirety of the material of which the sink was made. The opinion of the court shows the antiquity of the art of swaging, and the numerousness of the articles made from a single sheet of metal by the same class of well-known tools or machines used in all such operations.

So, in Strom Mfg. Co. v. Weir Frog Co., 83 Fed. 170, 27 C. C. A. 502, it was held upon a demurrer to the bill that there was no patentable invention in swaging or striking up, by means of a die from a block of malleable metal, of a rail brace of a form which had been previously made of cast metal.

In that case, as in this, the patent was not for the process of constructing the rail brace, but for the constructed article. Touching the suggestion that the form of the blank which will produce the lug of the patent involves invention, we can best answer as the same argument was answered in the case cited above by quoting from the opinion of Judge Severens: That "such forms are the result of mere cutting and trying experiments, or of reducing to a flat surface an article having the desired conformation. This is not invention."

When all has been said, the fact remains that the lug of the patent differs from the lug of the old art only because with certain immaterial and nonfunctionable changes in shape and appearance it has been struck out of a single sheet of malleable metal.

That the changes made have resulted in a considerable economy of metal as well as in a more durable article is likely. That it has met with a large sale and superseded the old cast iron lug is not sur-

prising, and for the purposes of this case must be admitted. But all improvement is not invention, and if the improved lug differs from that before in use only because it is better made and made out of better material it does not involve patentable invention.

In Risdon Locomotive Works v. Medart, 158 U. S. 68, 91, 15 Sup. Ct. 745, 39 L. Ed. 899, the Supreme Court, speaking by Justice Brown, said in support of a judgment sustaining a demurrer for want of patentable invention:

"This is a patent only for superior workmanship, and within all the authorities is invalid. This court has repeatedly stated that all improvement is not invention. If a certain device differs from what precedes it only in superiority of finish, or in greater accuracy of detail, it is but the carrying forward of an old idea, and does not amount to invention. Thus, if it had been customary to make an article of unpolished metal, it does not involve invention to polish it. If a telescope had been made with a certain degree of power, it involves no invention to make one which differs from the other only in its having greater power. If boards had heretofore been planed by hand, a board better planed by machinery would not be patentable, although in all these cases the machinery itself may be patentable."

The learned Justice cites in support the well-known cases of Smith v. Nichols, 21 Wall. 112, 119, 22 L. Ed. 566; Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; and Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647.

In respect of the point decided in Pickering v. McCullough he said:

"The patent was for an improvement in the manufacture of moulding crucibles and pots, made of a plastic material composed of black lead and fire clay. It appeared that difficulty had been experienced in removing the crucibles from the mould, in consequence of the adhesive nature of the black lead mixture employed in the manufacture. The invention obviated this difficulty, and by an improved mode of manufacture much labor and expense were saved, and crucibles were produced which were superior to those made by any particular mode known prior to the device in question. It was held that this did not involve invention."

Under the well-settled rule of this court, a patent is to be declared void upon its face "only when there is no room for thinking that any evidence can be adduced which would, if put into the case, alter the clear conviction of the court that there is no patentable invention in the production patented." Milner Seating Company v. Yesbera, 111 Fed. 386, 388, 49 C. C. A. 397; Strom Mfg. Co. v. Weir Frog Co., 83 Fed. 170, 27 C. C. A. 502; Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991.

The case in hand seems so plain and the result so inevitable that we have no hesitation in affirming the decree of the Circuit Court.