## W. S. TYLER CO. v. LUDLOW–SAYLOR WIRE CO.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1918.)

No. 5003.

1. PATENTS ☞328—VALIDITY—INVENTION.
   Patent No. 966,599, for woven wire screens used principally for screening ore, *held* invalid, being anticipated, and not showing invention.

2. PATENTS ☞21—PATENTABLE INVENTION—SUBSTITUTION OF MATERIALS.
   Substitution of a hard for a soft metal in one of the parts of a combination patent does not as a rule constitute patentable invention.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by the W. S. Tyler Company against the Ludlow-Saylor Wire Company. From a decree dismissing the bill, plaintiff appeals. Affirmed.

The following is the opinion of the court below:

I have listened with a great deal of interest to all that was said, and have given attention to all the testimony that was offered. I do not think that a further discussion of this matter will enable the court to do more than it is now able to do from all the testimony in the case. I have specially examined the exhibits that were filed, and I am satisfied, from those exhibits and from the evidence in the case, that there is neither novelty nor invention in this patent, and the result is that the bill will be dismissed.

Frederick P. Fish, of Boston, Mass. (James Negley Cooke, of Pittsburgh, Pa., and W. K. Richardson, of Boston, Mass., on the brief), for appellant.

William E. Garvin, of St. Louis, Mo. (James P. Dawson, of St. Louis, Mo., on the brief), for appellee.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. [1] This suit is brought to restrain infringement of patent No. 966,599, applied for May 27, 1907, and issued August 9, 1910, for woven wire screens. The answer sets up numerous defenses. The only one to which we shall refer is want of patentable invention. The bill was dismissed, and plaintiff appeals.

The patented article is for a woven wire fabric principally used for screening ore. The screen is made of rolled, woven wire. Its meshes are oblong. The weft wires are larger, made of softer metal, and spaced farther apart, than the warp wires. By the rolling the warp wire is pressed into the weft wire, so that it is interlocked with it, and thus the wires are held in place and prevented from sliding upon each other. These screens are fitted into a frame which revolves rapidly. The pulverized metal by centrifugal force is thrown against the sides. Particles smaller than the meshes pass through; larger particles are returned to the rolls for further pulverizing. The

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

desideratum was to produce a screen whose meshes would remain uniform during the life of the screen, would not clog, and would provide the largest amount of air space for the passage of the ore to be screened.

The principal competitor of the woven wire screen was the perforated slot screen made of plates containing perforations. It is conceded that plaintiff had manufactured, advertised, and sold a wire screen identical in form and size of wire, and serving the same purpose as the patented article, for at least two years prior to the invention. In that screen, however, both the weft and warp wires were of soft metal. The result was that the smaller wire wore out more quickly than the larger one. This impaired the durability of the screen to such an extent as to greatly restrict its sale. The patent calls for a screen in which the small warp wire is of harder metal than the weft wire. All that skillful argument can do to convince us that this change from a soft to a hard wire produced a new structure, having new functions, has been done; but it has failed to convince. It is urged that the substitution of the harder wire gave to the new screen resiliency, and imparted to it, what we must think for purposes of mystery, is spoken of as "the breathing of the screen." The screen, when in operation, is subjected to varying pressure, and it is claimed that, if it is made wholly of the soft metal, it is bent and remains permanently out of form, and thus becomes subject to greater wear; whereas the harder wire gives to the screen a springy or resilient power, so that after the pressure is withdrawn it returns promptly to its original shape. After the most careful study that we can give to the evidence, we are compelled to regard this as simply a "talking point." It is something that never occurred to the patentee. What he claims in his patent and likewise in his testimony, is that the substitution of the harder wire gave to his screen greater durability. That is the only added merit which is claimed, and we believe it is the only one which the screen possesses.

[2] This brings us to the real point in the case. Did the substitution of a hard warp wire in place of a soft one constitute patentable invention? We think it quite obvious that that question should receive a negative answer. The substitution of a different material in a structure has sometimes been held to be patentable. As a rule such substitution has produced difference in structure and in function. Smith v. Dental Vulcanite Co., 93 U. S. 496, 23 L. Ed. 952; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Edison, etc., Co. v. Electric Lighting Co., 52 Fed. 308, 3 C. C. A. 83. The general principle has been from the early case of Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, that to substitute a superior for an inferior material in one of the parts of a machine does not involve patentable invention. Here, however, the patentee does not do even that much. All he does is to substitute a harder metallic wire, where he had been using a soft one of the same metal. He did this for the simple and obvious purpose of making the two parts of his screens which for functional reasons were of different sizes, equal-

ly durable. He found from experience in the three years that he had made and sold the screen prior to his alleged invention that the smaller wires, being made of iron of the same degree of hardness as the larger wires, wore out faster. So, for the purpose of producing a screen whose two wires, while varying in size, should possess equal durability, he made the smaller wire of harder metal. After this change plaintiff's screen worked precisely as it had worked before. In so far as his invention has merit, its important elements were all embraced in the structure which plaintiff began making and selling in 1902. Consciously or unconsciously, what eminent counsel are trying to do is to bring forward all those elements and embody them with the patented improvement. That cannot be done. The sale of the old structure caused all its elements to pass to the public beyond plaintiff's power to recall.

We do not consider that this case lies close to the line; on the contrary, it lies well back in that field of nonpatentability whose boundary was first marked in Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, and has since been illustrated and more clearly defined in Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852; Union Hardware Co. v. Selchow (C. C.) 112 Fed. 1006; George Frost Co. v. Cohn (C. C.) 112 Fed. 1009; Drake Castle Pressed Steel Co. v. Brownell, 123 Fed. 86, 59 C. C. A. 216; Columbia Metal Box Co. v. Halper, 220 Fed. 912, 136 C. C. A. 478.

The decree is affirmed.