## HERMAN NELSON CORPORATION v. AMERICAN BLOWER CORPORATION.

### No. 6940.

Circuit Court of Appeals, Sixth Circuit.

June 2, 1936.

George I. Haight and Samuel W. Banning, both of Chicago, Ill., for appellant.

H. A. Toulmin, Jr., of Dayton, Ohio, for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The patent in suit, Shurtleff reissue No. 18,374, is for a heating and ventilating unit. It makes 34 claims, 20 of which were alleged in the bill to be infringed. The defenses were lack of invention, invalidity in view of the prior art and prior uses, and noninfringement. The lower court passed only on those of lack of invention and invalidity because of prior art and publications, sustaining both and dismissing the bill.

It is apparent from the prior patents and publications pleaded, as well as the adjudged cases [Callahan v. Nesbitt (C.C.A.) 1 F.(2d) 75; Herman Nelson Corporation v. Columbus Heating & V. Co. (C.C.A.6) 11 F.(2d) 273], that the art of constructing heating and ventilating apparatus is a crowded art. The record shows that the article covered by the appellant's patent was never used. Though described in variable terms in the claims, it consists in substance of a cabinet or housing having an air inlet through which air may be drawn, a fan to draw the air into the housing or cabinet and to drive it upwardly through a radiator of relatively small dimensions and lightness, whence it is discharged through an outlet in the wall. Provision is also made for a damper to divert the course of the air from the radiator and discharge it through the outlet when it is desired not to pass it through the radiator. The trial court found, citing many prior patents and publications, that all of these features of the device were old. Without referring to the citations in detail, it is enough to say that they sustain the court's view. The theory of appellant is that the finding was erroneous because it was based on a review of the general heating and ventilating art, and the patent in controversy is directed solely to a unit heating and ventilating device as such, a unit having a relatively light-weight radiator of cellular, tubular, or honeycomb construction, which, as it claims, is in a separate art or is an art in itself.

The specifications assert that the novel features of the patent are the result of the utilization of a highly efficient type of heating element or radiator heretofore limited in its use to the field of automobile

172

cooling systems, but adaptable to heating purposes as an element of the type of the apparatus disclosed by the patent. We cannot accept the view that this feature of the appellant's apparatus distinguishes it from the art of constructing a heating or ventilating apparatus or creates a new art in itself. Long before Shurtleff it was old to place a radiator in a housing having an outside air intake opening and a fan therein to draw the air in and pass it through a radiator also located in the housing to an outlet in the housing with a by-pass through which the air, when it was not desired to force it through the radiator, might be passed out. See Callahan v. Nesbitt, supra. True it is that the radiators in many of the old structures were made of cast iron, but lighter materials such as copper had also been used. All of these units did precisely what Shurtleff claims his structure does—utilized a 'fan for drawing the air into the housing from the outside and forcing it over the radiator to heat it, or by the radiator when more heat was not needed, to an opening, where it was permitted to escape. In some of them the radiators were of extremely light weight, as light as copper, the metal preferred by appellant for its radiator; in others the radiator was made of thin metal tubes or tubes with fins the equivalent of appellant's structure. The location of the fan in appellant's housing is not new, for it was old before Shurtleff to position the radiator above the fan—in fact, practically every conceivable effective arrangement of the elements is found in the prior art both as to the positions of the fan and radiator and as to the locations of the intake and outlet in the housing. Arrangement of these old devices in the combination, as said by the trial court, is for a mechanic.

Although the patent does not call for a copper radiator, the case is argued for appellant on the assumption that a relatively light radiator indicates a radiator made of copper or something equally as light, and that the case must be considered from the point of view of the use for the first time in a heating apparatus of a relatively light copper radiator. The trial court was of opinion that the evidence did not justify a finding that copper radiators had not been used in earlier heating devices. We think that view is correct, and we are of the further opinion that, if it were not, the substitution of that metal, a well-known heat transmitter, for other metals of the prior art used for the same purpose, with no change in the function or effectiveness of the combination, was not invention. Kilbourne v. W. Bingham Co., 50 F. 697, 703 (C.C.A.6); Strom Mfg. Co. v. Weir Frog Co., 83 F. 170 (C.C.A.6); Drake Castle Pressed Steel Lug Co. v. Brownell & Co., 123 F. 86 (C.C.A.6); Wise Soda Apparatus Co. v. Bishop-Babcock-Becker Co., 240 F. 733 (C.C.A.6). Neither, in our view, was it invention to use a smaller or lighter radiator [cf. A. O. Smith Corp. v. Petroleum Iron Works Co. (C.C.A.) 73 F. (2d) 531, 533, 535], for it effected no change in operative functions or results, and, besides, the record shows the use of other radiators and heating units of not greater dimensions or weight than contemplated by the patent.

The decree is affirmed.