.WEST *v.* RAE and others.

(*Circuit Court, N. D. Illinois.* November 21, 1887.)

1. PATENTS FOR INVENTIONS—INVENTION—PAPER WRAPPERS.

D. A. Swaney, January 17, 1882, procured a patent for incasing blankets in casings of paper of strong texture, closely sealed or pasted. to protect the blankets from soiling, dust, and rubbing in handling. *Held*, that as paper bags have been always closed with paste or gumming, it required no inventive genius to close the mouth with paste, if desired, nor to form the bag to the shape of the article it is desired to inclose.

2. SAME—INFRINGEMENT—INJUNCTION.

Plaintiff filed a bill to enjoin the infringement of his patent, and defendant demurred to the bill. *Held*, that when the court can, without referring to the pleadings and proofs, from its common knowledge, from an examination of the patent itself, see that it is void, a demurrer will be sustained.

In Equity. Bill for injunction.

Bill by plaintiff against M. E. Rae and others, defendants, to enjoin the infringement of a patent granted to D. A. Swaney, for a method of putting up blankets and similar articles.

*Banning & Banning*, for complainant.

*J. H. Raymond*, for defendants.

BLODGETT, J. The bill in this case charges infringement of letters patent, granted January 17, 1882, to D. A. Swaney, "for a method of putting up blankets and other similar articles," and defendants demur to the bill on the ground that the patent upon its face shows that it is void for want of patentable novelty. The novelty and utility of the device covered by the patent is stated by the patentee in his specifications as follows:

"Heretofore woolen blankets have been put up for packing, tranportation, and sale by folding, and then rolling them up in a tight roll, which was then covered by a sheet of paper secured by tightly-drawn twine. In this form it was exposed at the ends to dust, and liable to become soiled by contact with other objects, and, by handling, the nap was liable to be rubbed off, and free access was given to moths. The latter has been a very common cause of loss to manufacturers and dealers. Other objections have been the difficulty of packing the blankets when put up in this form for transportation and sale, and the rubbing of the nap and creasing caused by the many folds necessary to be given the blanket, and by the tightly-drawn string. I have discovered that if blankets are put up in a tightly-closed strong paper bag they are perfectly protected from the entrance of moths, and that such a bag can be made in such form as to reduce the folding and handling to a minimum, and be most perfectly adapted for packing in cases for transportation, and at the same time be in a most attractive and salable form for the shelves of the retail shop. The complete inclosure of the blanket will protect it also from soiling, dust, and rubbing in handling. The same kind of bags are very useful in packing the blankets and similar bedding of a household away during the warmer weather, and will supply a want long felt in domestic life."

And the claim of the patent is:

"The herein described method of putting up blankets and similar articles, consisting of enveloping them in a casing of paper of strong texture closely sealed or pasted, substantially as shown and described."

I may remark, in passing, that I think this statement in the specifications of the method of putting up blankets, before this patentee taught the world how to do it in his way, must have been a very incomplete use of the then known appliances, as if it had then been deemed desirable to close the ends of the roll with the paper wrapping, it could have been done by folding the paper over the ends as well as the sides of the roll, as is done by all merchants and manufacturers who wish to make an approximately close package of any dry goods they put up for transportation, handling, or protection. There was certainly no reason why a manufacturer of, or dealer in, blankets should not, before this alleged invention, have closed or enveloped the ends of his package with his sheet of wrapping-paper if he desired to so close them, when articles like calico, ribbons, tea, sugar, coffee, etc., have been put up in approximately close paper packages at the counters of retail merchants probably for centuries, and ever since the use of paper as a wrapping for commodities sold or manufactured came into use.

The patentee proceeds in his specifications to direct how the blanket is to be folded, in which there is certainly no novelty, as he describes only the well-known method of folding the blanket in a series of longitudinal and transverse folds until it is brought to the desired size for packing. It is then inserted in a paper bag of the size required to receive the blanket as folded, and the open end of the bag through which the folded blanket is inserted is then closed by pasting. Briefly stated, then, the device covered by the claim of this patent consists in wrapping up a blanket or any similar article in strong paper, and then closing the ends and sides of the paper wrapper by pasting; for I take it that it is immaterial whether you make your bag first, leaving the end or side open, and then insert your blanket into it, or whether you make your bag by wrapping the paper around the folded blanket, and then fasten the ends and sides by pasting. It may save time to make up the bags first, so far as closing one end and the sides; but it can make no difference in principle whether the bags are made over a "former," and the blankets pushed or crowded into them, or whether each bag is made over the particular folded blanket it is to hold. The result in both cases is the same, só far as this patent is concerned.

Paper bags as a wrapping or envelope for dry goods, flour, groceries, etc., are in such common use that the court can say from its common knowledge that they were well known throughout the United States when this patent was applied for and granted; but usually the open end or mouth through which they were filled was closed by tying with a string, and the alleged invention covered by this patent, when read in the light of that common knowledge, consists in putting a folded blanket into a paper bag, and closing the mouth of the bag with paste instead of a string. The bottom or lower end of these bags has always been closed with paste, or by gumming, and it certainly did not require the exercise of inventive genius to close the mouth or upper end of the bag with paste, if it was found for any reason desirable to do so. In fact, I can say as the result of my own observation and knowledge, that I have seen paper

bags in use in retail stores where the lips of the mouth were coated with gum so as to admit of closing the mouth by moistening this gum and folding the lips over against the side; but, without such observation, I say that, when once you are instructed how to close one end of a bag with paste or gum, there can be no invention in closing the other by the same means.

Nor is there anything patentable in the idea of adapting the form of the bag to the article it is to inclose or contain. A paper bag is but a paper wrapper partly put together for use. If it was intended only to inclose loose articles, like coffee, flour, etc., no attempt would be made to confine it to a particular shape; but if the manufacturer of loaf sugar, for instance, in the pyramidal form, with which we are all familiar, should wish to incase his loaves in paper bags instead of paper wrappings tied with a string, he would, of course, shape his bags upon a "form" like his sugar loaves; and in fact this patentee's bags for a blanket are nothing more than the paper wrappings of a sugar loaf, with the paper fastened by paste, instead of being tied with a string to keep them in place.

I am not aware that the practice of raising by demurrer the question, based on common knowledge, that a patent is void for want of novelty, has the direct sanction of any adjudged case, but the books abound in cases where the court has of its common knowledge *sua sponte* held patents void for want of patentable novelty. In *Brown* v. *Piper*, 91 U. S. 44, Mr. Justice SWAYNE said:

"The courts will take judicial cognizance of whatever is generally known within the limits of their jurisdiction, and if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper."

And after this statement of the right of the court to apply its common knowledge to the case in hand, he said:

"The pleadings and proof in the case under consideration are silent as to the ice-cream freezer; but it is a thing in the common knowledge of the people throughout the country. Notice and proof were therefore unnecessary. The statute requiring notice was not intended to apply to such cases. The court can take judicial notice of it, and give it the same effect as if it had been set up in the answer, and the proof were plenary."

And again:

"Examined in the light of these considerations, we think this patent was void upon its face, and that the court might have stopped short at that instrument, [the patent itself,] and, without looking beyond it into the answers and testimony *sua sponte,* if the objections were not taken by counsel, well have adjudged in favor of the defendant."

And the rule here stated has been affirmed since this decision in *Terhune* v. *Phillips*, 99 U. S. 592; *Dunbar* v. *Myers*, 94 U. S. 187; *Slawson* v. *Railroad Co.*, 107 U. S. 652, 2 Sup. Ct. Rep. 663; *Wollensak* v. *Reiher*, 115 U. S. 96, 5 Sup. Ct. Rep. 1137, and in numerous cases at circuit.

The method of putting up blankets, covered by this patent, is but a new use of an old and well-known device, in common use and well and

publicly known long before this patent was applied for. Paper bags being old for various purposes when protection from dirt or wear was desirable, there was no invention in using them to protect blankets; and with an article as flexible as paper, there can be no invention in adapting a bag made of paper to the shape of article it is to cover and protect. In the light of these authorities, I cannot see why, in a suit for infringement of a patent so clearly and baldly void as this, the court ought not to save the defendant from the vexation and expense of a trial upon proofs by sustaining a demurrer to the bill. If, after a case reaches the supreme court, that court can, from its common knowledge, without reference to the pleadings and proofs, but merely from an examination of the patent itself, say that the patent is void, I see no reason why the court of original jurisdiction cannot do the same.

The demurrer is therefore sustained, and the bill dismissed for want of equity.