## STROM MANUF'G CO. v. WEIR FROG CO.

### (Circuit Court, S. D. Ohio, W. D. June 1, 1896.)

### No. 4,605.

1. PATENTS—SUFFICIENCY OF DESCRIPTION—SWAGING RAIL BRACES.

The Alkins patent, No. 352,286, for an improvement in rail braces, consisting in striking them up from a metal blank, *held*, in view of the antiquity of the art of swaging, not to be void as to claims 1, 2, 3, 9, and 10, for want of a sufficient description to comply with Rev. St. § 4888, though the process is not stated in detail. Kilbourne v. W. Bingham Co., 1 C. C. A. 617, 50 Fed. 697, followed.

2. SAME—NOVELTY AND INVENTION.

There is no patentable invention involved in swaging, or striking up by means of a die, from a blank of malleable iron or steel, a rail brace of a form which had previously been made of cast metals. Kilbourne v. W. Bingham Co., 1 C. C. A. 617, 50 Fed. 697, followed.

3. SAME.

The Alkins patent, No. 352,286, for an improvement in rail braces, consisting in swaging them from blanks, is void on its face for want of novelty and invention.

4. SAME—DEMURRER FOR WANT OF INVENTION.

The cause should be considered upon the merits, on demurrer to the bill, whenever it appears upon the face of the patent that it lacks invention. Locomotive Works v. Medart, 15 Sup. Ct. 745, 158 U. S. 68, followed.

This was a suit in equity by the Strom Manufacturing Company against the Weir Frog Company for alleged infringement of letters patent No. 352,286, issued November 9, 1886, to Charles Alkins for improvements in rail braces. The cause was heard on demurrer to the bill.

In describing his invention, the patentee says:

"This invention relates to the manufacture of rail braces which are employed for the purpose of bracing the rails of a railroad, particularly at frogs or switches, or at points where bends or curves occur in the road. These braces are usually constructed with a base portion adapted to be spiked down upon a cross-tie or other appropriate bed, and with an abutment rising from

said base portion and adapted to fit against the rail. Prior to my invention, rail braces of such character have been formed of cast metal, the abutment being necessarily cast solid, in order to insure the requisite strength and durability.

"The objects of my invention are—First, to produce, at a reduced cost and in a more convenient way, a rail brace possessing in a high degree both strength and durability, and involving all of the advantages without the disadvantages of the old construction of rail braces; second, to rapidly and economically produce a rail brace possessing all of the necessary features of strength, durability, and adaptability to its destined purpose, and at the same time involving the employment of considerably less metal than in the old construction of brace, whereby a saving in material is effected, and the cost of production lessened, without weakening or otherwise detracting from the serviceability of the brace; third, to effect a considerable lessening of the time and labor heretofore incident to the manufacture of rail braces, thereby reducing the cost of their manufacture, and permitting large orders to be filled rapidly.

"In carrying out my invention the rail brace is stamped and struck up by dies from a blank of wrought or malleable iron or steel in a manner to convert the blank into a suitable base provided with a hollow abutment adapted to engage the rail in order to effectively brace the same. As will be hereinafter seen, the blanks can be sheared from a strip or oblong plate without loss of material, and the said blanks then cut or trimmed so as to shape them with reference to the desired ultimate shape of the abutting end or face of the hollow abutment, and to the particular way in which it is desired said hollow abutment shall bear against or engage the rail. It will be obvious that, in the production of said braces. considerably less time and labor will be involved than in the production of the old brace of cast metal, particularly for the reason that the provision of molds for forming the casting is rendered unnecessary, and that said braces will be lighter and more economical than the old construction of cast-metal rail brace, on account of the saving effected in the material of which the brace is formed.    *    *    *    *    *    *    *    *    *    *

"It is understood that the metal blanks could be struck up to form hollow abutments varying in shape from those herein shown, and that the blanks can be composed of either steel or wrought or malleable iron. The form of blanks herein shown is, however, particularly well adapted for the purpose, and the shape of the abutment is especially desirable, since the material is utilized in a most economical manner, and an exceedingly strong, and at the same time comparatively light, rail brace produced.

"The base portion of the brace will be provided with any suitable arrangement of notch or notches and holes for the spikes by which the brace is to be secured in place, said notch and holes being conveniently formed by the dies simultaneously with the operation of striking up the hollow abutment and otherwise shaping the brace to the contour of a rail."

The claims involved in this suit are as follows:

"(1) The improvement in the art of manufacturing rail braces, consisting in striking up a metal blank into a hollow abutment rising from a base, with its front or abutting end and said base shaped to the portions of the rail against which the brace is to bear, substantially as described.

"(2) The improvement in the art of manufacturing rail braces, consisting in striking up between the two opposite side edges and at one end portion of a metal blank a hollow abutment, with its front or abutting end shaped to the portions of the rail against which it is to bear, substantially as described.

"(3) The improvement in the art of manufacturing rail braces, consisting in forming an oblong metal blank widening towards one end, and striking up a length of the wider end portion of said blank into a hollow abutment, with its front or abutting end and the material left as a base shaped to the portions of the rail against which the brace is to bear, substantially as described.
*    *    *    *    *    *    *    *    *    *    *    *    *

"(6) The blank, A, for a rail brace, widening towards one end, substantially as described.

*     *     *     *     *     *     *     *     *     *     *     *     *

"(9) A struck-up metal rail brace having a hollow abutment rising from a base, substantially as described.

"(10) The struck-up metal rail brace formed with the hollow abutment, 3, rising from a base, 4, substantially as described."

The following drawings will aid to understand the character of the alleged invention:

Dyrenforth & Dyrenforth and Geo. S. Bailey, for complainant.
Wood & Boyd, for defendant.

SAGE, District Judge.     The defendant demurs to the first, second, third, sixth, ninth, and tenth claims of the complainant's patent, granted to Charles Alkins, November 6, 1886, for an improvement in rail braces.

(1) The first ground of demurrer is that the bill does not contain any matter of equity whereon this court could ground any decree and give to the complainant any relief against the defendant on account of said claims.

(2) That the alleged improvements specified in said claims were not new and patentable at the time of the alleged invention thereof, inasmuch as before that time it was the common and general knowledge of the public, of which the court will take judicial notice, that the art of striking up metal blanks into hollow articles was old, that the shaping of the article produced depended upon the form of the dies used, and that it has been held not to be invention to change the form of a die so as to make a new-shaped article under it.

(3) That cast rail braces of the character and form of the patented one, but with the solid abutments, being admitted by the bill to be old before the date of the alleged invention, it is not shown by said bill that there was any invention in making the abutment hollow; that being a well and generally known result of the common practice of the art of striking up metal into any hollow form, of which the court will take judicial notice, and no novel, special, or other means than the public possessed is described in said patent for the accomplishment of this result.

Counsel subsequently added the following causes of demurrer:

(4) That there is no allegation that the invention, or so much of it as is specified in said claims, had not been patented or described in any printed publication in this or any foreign country before the date of the invention.

This ground of demurrer was conceded by counsel for the complainant, who prepared and submitted to defendant's counsel an amendment curing the defect, which has been admitted to the files.

(5) That the patent is void, so far as it relates to claims 1, 2, and 3, because there is no sufficient description, as required by section 4888 of the Revised Statutes of the United States.

(6) That the patent is void, so far as it relates to claims 9 and 10, because there is no sufficient description, as required by section 4888 of the Revised Statutes of the United States.

The fifth and sixth causes for demurrer will be overruled for the reasons stated in Kilbourne v. W. Bingham Co., 1 C. C. A. 617, 50 Fed. 697. That suit related to a sink swaged or struck up from a single sheet of wrought iron or steel, without joint, seam, or interior angle. The court said that, if that element of the claim were a new process, it was not sufficiently described to meet all requirements of section 4888, but that the antiquity of the process, and the fact that the patentee did not expressly or by implication claim it, saved the patent from the objection.

The court further said that "the art of swaging metals into any required form was venerable long anterior to this patent." Then follow illustrations, and the statement that "the variety of manufactures by this process has been limited only by the art of designing, the ductility of metals, and the possibilities of machinery." The same case in the court below is reported in 47 Fed. 57, where a like view was taken.

So here, although the process is not stated in detail in the claims, it is, considering the antiquity of the art of swaging, sufficiently shown in the drawings and in the specification. The remaining causes for demurrer are well founded upon the authority of the cases already cited. It appears from the specification of the letters patent that, prior to the complainant's invention, braces formed of cast metal, and of the character of the brace described upon which the claims are founded, had been in common use, and the only novelty in the complainant's construction consisted in the production of a rail brace stamped or struck up by dies from a blank of wrought or malleable iron or steel in a manner to convert the blank into a suitable base provided with a hollow abutment adapted to engage the rail in order to effectively brace the same. The blank, it is stated in the specification, can be sheared from a strip or oblong plate, then cut or trimmed with reference to the

desired ultimate shape of the abutting end or face of the hollow abutment, and to the particular way in which it is desired that the same shall bear against or engage the rail. There is no invention displayed in this improvement. The reasons for this conclusion are so fully stated in the cases cited above as to make the reference sufficient. The suggestion made by counsel for the complainant that general demurrers to bills in patent suits ought to be discouraged, upon the authority of McCoy v. Nelson, 121 U. S. 484, 7 Sup. Ct. 1000, and other cases cited in the brief, is fully met and overcome by the later cases (see Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745), which favor consideration of the merits upon demurrer, and dismissal of the bill whenever it appears upon the face of the patent that it lacks invention. Certainly such practice ought to be encouraged. Otherwise, the life of a worthless or invalid patent might be prolonged, and sums exacted by way of compromise from users by reason of the dread of the heavy expenses attending the taking of testimony and other matters necessary to the preparation of patent suits for final hearing.

The demurrer will be sustained upon the first three grounds assigned. The fourth ground, having been, by consent, cured by amendment, will be treated as withdrawn. The fifth and sixth grounds of demurrer will be overruled. The bill will be dismissed, at the costs of the complainant.