## CONLEY v. MARUM.

### (Circuit Court, S. D. New York. November 12, 1897.)

PATENTS—INVENTION—TOBACCO WRAPPERS.

The Conley patent, No. 526,517, for an improvement in wrappers for tobacco, consisting of a combined paper and foil wrapper made by securing the sheet of foil to the sheet of paper, not over the whole meeting surfaces, but only in narrow zones, leaving the remaining portions of the meeting sur-

faces disunited, *held* void on demurrer for want of patentable invention appearing on the face thereof.

This was a suit in equity by John Conley against Simon C. Marum for alleged infringement of a patent for an improvement in wrappers for tobacco. The cause was heard on demurrer to the bill for want of patentable invention.

Arthur v. Briesen and H. M. Turk, for complainant.
Harry E. Knight and George H. Knight, for defendant.

COXE, District Judge. This is an infringement suit based upon letters patent, No. 526,517, granted to the complainant September 25, 1894, for an improvement in wrappers for tobacco. The alleged invention consists in a combined paper and foil wrapper made "by securing the sheet of foil to the sheet of paper, not over the whole meeting surfaces, but only at small areas thereof." The claims are as follows:

"(1) A wrapper consisting of sheets of paper and foil laid together face to face secured to each other at small portions of their meeting surfaces only, leaving the remaining portions of said meeting surfaces disunited, substantially as described.

"(2) A wrapper consisting of sheets of paper and foil secured together by narrow zones of adhesive material c, d, substantially as described.

"(3) As a new article of manufacture, a wrapper consisting of separate pieces of foil and paper united together by means of an adhesive substance applied to portions only of their meeting surfaces, the portions of the sheets of said compound wrapper not in contact with such adhesive substance being composed solely of the separate pieces of foil and paper, substantially as described."

The defendant demurs upon the ground that the patent shows upon its face that it is void for lack of novelty and invention. That this question may be presented by demurrer is now firmly established. Locomotive Works v. Medart, 158 U. S. 68, 84, 15 Sup. Ct. 745; Richards v. Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831; Id., 159 U. S. 477, 16 Sup. Ct. 53; Button-Fastener Co. v. Schlochtmeyer, 69 Fed. 592; Cleveland Faucet Co. v. Vulcan Brass Co., 72 Fed. 505. Indeed, the practice of disposing of this question in limine is not only permitted but encouraged by the courts. Strom Manuf'g Co. v. Weir Frog Co., 75 Fed. 279. Patent litigation is so expensive, dilatory and, ofttimes, vexatious, the record frequently containing a mass of irrelevant matter not even alluded to at the argument, that it would seem to be in the interest of both parties that the question of patentability should be determined before the flood gates of testimony are opened. In plain language the patent is for a sheet of tin foil and a sheet of paper stuck together by paste which does not cover the entire surface of the sheets. A person who pastes these sheets together at the four corners only, infringes the first and third claims. Should he adopt the plan which, for many years, has been familiar to compilers of scrap books, and which in one of its well-known varieties bears the name of a popular American humorist, he would infringe all the claims. What is referred to in the patent as "a narrow zone of adhesive material" may be created by drawing a brush of mucilage across the paper in a straight line. The patentee did not originate the use of tin foil

as a wrapper for tobacco, or its use in connection with a sheet of paper, or its use when pasted to a sheet of paper. All this appears from the specification. It can hardly be said that he was the first to discover that it is more economical to use a small amount of paste than a large amount or that paper covered with paste is liable to become damp; although the extravagant use of paste by former operators and the evils which follow from the humidity thus occasioned are some of the "difficulties" pointed out in the specification as having been "overcome" by the patentee when his mind finally and securely grasped the idea of using less paste. The first form of wrapper described in the specification showed the patentee how to avoid the wrinkled, stiff appearance which he deemed disadvantageous, the second form showed him how to avoid the difficulties occasioned by handling the sheets of tin foil and paper separately. He simply utilized what was plainly shown in the structures which he describes. Every advantage pointed out by him is found in one or the other of the prior wrappers. It cannot be that where two sheets have been used to produce a given result, both when pasted together and when not so pasted, a valid patent can issue to one who produces the same result with the identical sheets, simply because he uses less paste or applies it in a different manner or to a smaller surface. The wrapper of the patent is used in all respects as were the old wrappers. The alleged advantages are due to the method of applying the paste and that method is so old and simple that nothing but ordinary common sense was needed to apply it. It is safe to assert that there is not in the land a lawyer, editor or bookbinder of mature age who has not pasted papers together with mucilage applied in zones and spots. This method is probably as old as the use of paper and paste; certainly it was venerable in 1893 when the application in question was filed. The demurrer is allowed.