### KRELL AUTO GRAND PIANO CO. OF AMERICA v. STORY & CLARK CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,968.

1. PATENTS (§ 310*)—VALIDITY—DETERMINATION ON DEMURRER.

A patent cannot be held invalid on demurrer to a bill for its infringement unless inevitably void either on its face or by reason of matters of such universal or common knowledge that the court may take judicial notice of them.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

2. PATENTS (§ 25*)—VALIDITY—PATENTABLE COMBINATION.

A patent for a mechanism consisting of two or more elements is not necessarily invalid as an aggregation because there is no direct coaction

between the elements, where such coaction comes to produce a unitary result through the mediation of the operator or the operating force.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–29; Dec. Dig. § 25.*]

3. PATENTS (§ 328*)—VALIDITY—AUTOMATIC PIANO PLAYER.

The Welin patent, No. 825,784, for an automatic playing attachment for musical instruments, is not void on its face either for lack of patentable novelty or as an aggregation of old elements.

4. PATENTS (§ 25*)—"AGGREGATION" DEFINED.

In one sense (which, in the interest of accurate terminology, might well be taken as the exclusive sense) "aggregation," in the law of patents, means that the claims in and of themselves, independently of the prior art, show that the elements are incapable of coacting to produce a unitary result.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–29; Dec. Dig. § 25.*

For other definitions, see Words and Phrases, vol. 1, p. 271.]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit in equity by the Krell Auto Grand Piano Company of America against the Story & Clark Company and Harold J. Morris, agent. Decree for defendants, and complainant appeals. Reversed.

Appellant filed its bill, in the usual form, to hold appellees as infringers of the Welin patent, No. 825,784, issued July 10, 1906, on application filed July 20, 1904, for an "automatic playing attachment for musical instruments." Appellees demurred on the grounds (1) that no patentable novelty is disclosed in the specification and claims, and (2) that the claims are for aggregations of old elements which have not been brought into patentable combinations. Upon the demurrer's being sustained, the bill was dismissed for want of equity; and this appeal resulted.

Drawings, description, and claims of the patent are as follows:

"This invention relates to that class of automatic playing attachments which are housed within the casing of the pianos to which they are applied.

"The especial object of this invention is to combine the levers which control the automatic playing with the piano casing in a strong, compact, and convenient arrangement which will permit said parts to be entirely inclosed when the piano is to be played manually and while at the same time said parts will occupy comparatively little room within the casing itself.

"To these ends this invention consists of the piano casing and of the combinations of parts therein, as hereinafter described, and more particularly pointed out in the claims at the end of this specification.

"In the accompanying two sheets of drawings, Figure 1 is a sectional view of sufficient parts of a piano casing to illustrate the application of my invention thereto; and Fig. 2 is a perspective view of the controlling levers, showing the fall-board swung down into position to permit access to the levers.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"In equipping a piano case with controlling levers for the automatic playing I arrange them above the ledge of the keyboard, and the ends of the controlling levers extend out into a recess which is normally closed by a small fall-board or swinging cover and which fall-board when opened forms a ledge for guiding the hands of the user in the lateral movement of the levers. The piano casing, as usual, has a keyboard ledge or board L.

"The controlling levers are preferably arranged underneath the piano keys and are ordinarily concealed from view so that there will be no indication on the exterior of the piano that the piano is provided with automatic playing attachments.

"As shown in Fig. 1, the keys K are located above the ledge or board L. Below the keys K are the controlling levers C, which extend forward, so that their front ends are located in a hollow key slip or recess of the keyboard ledge.

"As shown most clearly in Fig. 1, this recess has an inner stationary member S and can be opened and closed by an outer member in the form of a pivoted or rockable cover or fall-board F.

"When the lower fall-board F is closed, as shown in Fig. 1, it constitutes, in effect, part of a continuous rail co-operating with the fall-board or key-cover E, while when the small fall-board F is swung down or opened, as shown in Fig. 2, about its pivot, which is preferably lower than the ends of the levers, it forms, in effect, a supporting ledge for guiding the lateral movement of the hand of the operator when shifting the controlling levers.

"I am aware that changes may be made in applying my invention to piano cases of different styles and proportions. I do not wish, therefore, to be limited to the construction I have herein shown and described; but

"What I do claim, and desire to secure by letters patent of the United States, is:

"1. The combination of a piano casing, controlling levers for automatic playing attachments with the ends of said levers below and in front of the piano keys, and a fall-board or swinging cover for concealing said levers mounted to swing on a pivot located lower than the ends of said levers:

"2. The combination of a piano casing, controlling levers for automatic playing attachments, and a pivoted fall-board or rockable member which, when in normal position, conceals the controlling levers and forms part of the ledge or rail which co-operates with the key-cover and which when open, forms a ledge or support for the hand of the operator.

"3. The combination of a piano casing, controlling levers for automatic playing attachments, located below the piano keys and having their ends extending forward into a recess or opening in the key rail or ledge of the casing, and a pivoted fall-board, which, when in normal position, conceals the controlling levers, and forms part of the ledge or rail which co-operates with the key cover and which, when open, forms a ledge or support for the hand of the operator.

"4. In an automatic combination-piano, a recessed or hollow key-slip composed of an inner member and an outer movable member; in combination with the key-bed, manual keyboard, and expression-manipulatory devices, having their terminals beneath said key-slip.

"5. In an automatic combination-piano, a recessed or hollow key-slip comprising an outer rockable member in combination with the manual keyboard and expression-manipulatory devices, having their terminals beneath said key-slip, said rockable member being adapted to swing outwardly under said manipulatory devices."

Outside the record, which consists of bill, patent, demurrer, ruling, and decree, appellees call our attention to patents, articles on piano building and cabinet making in encyclopedias, photographs of old paintings, histories of musical art, and catalogues of museums and world expositions.

Russell Wiles and P. C. Dyrenforth, both of Chicago, Ill., and Joseph A. Minturn and Frank W. Woerner, both of Indianapolis, Ind., for appellant.

Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., for appellees.

Before BAKER and KOHLSAAT, Circuit Judges, and WRIGHT, District Judge.

BAKER, Circuit Judge (after stating the facts as above). [1] I. Is the exhibited patent inevitably void by reason of facts within judicial notice?

In Lange v. McGuin, 177 Fed. 219, 101 C. C. A. 389, this court said:

"The office of a general demurrer to a bill is to test the legal sufficiency of the averments to state a good cause of action in equity. Of course, a demurrer may be addressed to a bill for infringement of a patent as well as to any other bill. And, though the bill be in due form and complete in all its parts, yet, if the exhibited patent be inevitably void either on its face or by reason of matters of universal knowledge, the demurrer should be sustained.

\* \* \* \* \* \* \* \* \*

"Bills in patent causes and demurrers thereto are not so unique that they are exempt from the general principles and rules of equity pleading. And therein it is not the province of a demurrer to speak of matters beyond the bill. Of course, every bill is written against the background of common knowledge; and in that view a demurrer may be said to invite the chancellor to take judicial notice of the background. But if a bill, in and by its own averments, states a prima facie case, that case cannot properly be overthrown by the chancellor merely on the ground that he judicially knows of facts that would support an answer. His judicial knowledge must go farther, and be so broad and all-embracing that he can properly hold that no facts exist that would tend to controvert the supposed answer and support a replication and the bill. This is so because, if such facts exist, the complainant is entitled to a hearing where he can present and argue the facts, and such a hearing cannot be had on demurrer to the bill." [1]

[1] Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Slawson v. Grand St. R. Co., 107 U. S. 652, 2 Sup. Ct. 663, 27 L. Ed. 576; Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991; Risdon Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899; Kaolatype Engraving Co. v. Hoke (C. C.) 30 Fed. 444; N. Y. Belting & P. Co. v. N. J. Car-Spring & Rubber Co. (C. C.) 30 Fed. 785; West v. Rae (C. C.) 33 Fed. 45; Eclipse Mfg. Co. v. Adkins (C. C.) 36 Fed. 551; Buckingham v. Iron Co. (C. C.) 51 Fed. 236; Wall v. Leck (C. C.) 61 Fed. 291; American Fiber-Chamois Co. v. Buckskin Fiber Co., 72 Fed. 508, 18 C. C. A. 662; Caldwell v. Powell, 73 Fed. 488, 19 C. C. A. 592; Strom Mfg. Co. v. Weir Frog Co. (C. C.) 75 Fed. 279, and Id., 83 Fed. 170, 27 C. C. A. 502; Conley v. Marum (C. C.) 83 Fed. 309, and Id., 84 Fed. 990, 29 C. C. A. 680; Lappin Brake-Shoe Co. v. Corning Brake-Shoe Co. (C. C.) 94 Fed. 162, and Id., 99 Fed. 1004, 40 C. C. A. 215; Higgin Mfg. Co. v. Scherer, 100 Fed. 459, 40 C. C. A. 491; Beer v. Walbridge, 100 Fed. 465, 40 C. C. A. 496; Richards v. Michigan Cent. R. Co., 102 Fed. 508, 42 C. C. A. 484; Fowler v. City of New York (C. C.) 110 Fed. 749; Milner Seating Co. v. Yesbera, 111 Fed. 386, 49 C. C. A. 397; Mahler v. Animarium Co., 111 Fed. 530, 49 C. C. A. 431; Chinnock v. Patterson Tel. Co., 112 Fed. 531, 50 C. C. A. 384; Hocke v. New York Central R. Co. (C. C.) 117 Fed. 320; Drake Castle Pressed Steel Co. v. Brownell, 123 Fed. 86, 59 C. C. A. 216; American Sales Book Co. v. Carter-Crume Co. (C. C.) 125 Fed. 499; Brunswick-Balke-Collender Co. v. Klumpp (C. C.) 126 Fed. 765; General Electric Co. v. Campbell (C. C.) 137 Fed. 600; American Type Founders Co. v. Damon & Peets (C. C.) 140 Fed. 715; Kuhn v. Lock Stub Check Co. (C. C.) 157 Fed. 235, and Id., 165 Fed. 445, 91 C. C. A. 389; Southern Plow Co. v. Atlanta Agricultural Works (C. C.) 165 Fed. 214; Victor Co. v. Hawthorne (C. C.) 168 Fed. 554, and Id., 178 Fed. 455, 101 C. C. A. 439; Neidich v. Edwards (C. C.) 169 Fed. 424; Westrumite Co. v. Commissioners, 174 Fed. 144, 98 C. C. A. 178; Charles Boldt Co. v. Nivison, 194 Fed. 871, 114 C. C. A. 617; International Mausoleum Co. v. Sievert (D. C.) 197 Fed. 936.

As a general formula it is said that courts will treat as evidence "facts of universal notoriety," "facts that may be regarded as forming a part of the common knowledge of every person of ordinary understanding and intelligence"; and that for the purpose of "refreshing the memory" reference may be made to "standard publications." Public libraries and museums are open to all. But is every book a standard publication? Is everything in a standard publication true? If true statements were somehow marked for immediate identification, would all of them be known to the person of ordinary understanding and intelligence? Is there nothing in accessible records and memorials that is rare, curious, not commonly known? But we find it unnecessary to inquire how far, if at all, appellees have been flattering the common knowledge, for, if every item be accepted as evidentiary, we are nevertheless unable to draw therefrom the finding of ultimate fact which, under the rule stated in Lange v. McGuin, would be necessary to defeat the patent.

Two classes of matters are brought forward, general publications and patents.

All that we learn from the words and pictures of the publications is that in ancient desks, cabinets, and casings of musical instruments it is common to find recesses concealed by covers that slide or are variously hinged. The precise and limited combination of the patent in suit is not found. This combination is restricted to a piano that can be played both manually and mechanically, and has to do with an instrument that in form and mechanism has wholly developed since the ancient cabinet makers were at work.

Eighteen patents are cited. Half of these, by reason of their dates, would be eliminated as evidence of a defense if appellant on rebuttal should carry Welin's date of invention back to the beginning of the two-year period prior to his application. That is, patents and other publications since July 20, 1902, may be overcome by evidence which, if it exists, cannot be noticed except from proofs duly introduced, and which judicial knowledge or foreknowledge cannot say is nonexistent.

Among those that antedate July 20, 1902, we find none that in terms or apparent scope is exactly anticipative of Welin's combination. So the question would be whether the disclosures were so suggestive of the new modifications and constructions of Welin that mechanics skilled in the art of building combination-pianos would, or could when called on, at once adopt the suggestions, or whether there still remained room in the art for the exercise of the inventive faculty in producing the Welin device. If these prior patents be taken as proving that common knowledge includes the facts, that, at the date of Welin's production, combination-pianos were old and that various attempts to improve the location and relation of parts had been made, they do not afford the special knowledge necessary to determine whether the paper attempts in fact advanced the practical art; whether the mechanical relations between the parts necessary for manual playing and the parts for mechanical playing rendered the Welin construction difficult, if not seemingly impossible; whether mechanics skilled in the practical art had long and vainly striven to achieve the Welin result; and whether, if

all the evidence respecting the art, both paper and practical, left the presumptive validity of the patent wavering in the balance, the device filled a special need, met with prompt and great success, and was recognized as a meritorious invention by those specially skilled and interested in the art, either by their keeping away from the patent, or by their paying royalties for its use.

In this case no one thing among those of which we are asked to take judicial notice squarely anticipates Welin's combinations. Though all the elements may be old and may have been variously combined, a new combination of them may involve invention. Granting that appellees' showing and argument, in the absence of other evidence, might justify a finding that the defense of want of invention was sustained, we cannot find as a fact that judicial knowledge extends to the point of knowing that appellant can produce no competent and relevant evidence in support of the patent's presumptive validity and in antagonism of the inference of ultimate fact sought to be drawn from the evidence for the defense.

II. Are the claims void because elements have been aggregated and not patentally combined?

In the books the word "aggregation" is used in different senses. Of one of these, Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991, on petition for rehearing 159 U. S. 477, 16 Sup. Ct. 53, 40 L. Ed. 225, is a good illustration. There Richards brought together certain elements in order to "do away with elevators, by securing the continuous and automatic transfer of grain from one car to another, weighing it in transit, and preserving the identity of each lot." On examination of the prior art it was found that each element was old. Invention, therefore, if present, lay in a new combination of old elements. But on analysis it appeared that Richards' combination "resolves itself into the omission of the storage feature and a necessary incident thereto"; that is, Richards took an old combination and omitted one element and also its function. So with respect to neither the elements considered separately nor the combination viewed as an entity had Richards produced anything new. The implication, however, is that, if he had, a patentable combination might have been found. In other words, the claims, in and of themselves, independently of the prior art, did not show that the elements were incapable of coacting to produce a unitary result. If the word "aggregation," in the sense that a patent is "void for lack of invention in view of the prior art," is sought to be applied in this case, the inquiry reverts to the question of fact considered in the first part of this opinion.

[4] In another sense (which, in the interest of accurate terminology, might well be taken as the exclusive sense) "aggregation" means that the claims, in and of themselves, independently of the prior art, show that the elements are incapable of coacting to produce a unitary result. Illustrative of this is the case of Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719. "A handle in common, a joint handle, does not create a new or combined operation." In the instances of pencil and eraser, pencil and pen, corkscrew and knife blade, tooth pick and ear spoon, granting that each element is novel, the claims, in and of themselves,

independently of the prior art, affirmatively disclose that a common handle cannot make any two or more of those elements coact to produce a unitary result, a combined operation.

Now, in Welin's device it is evident that the controlling levers C and the fall-board F have no immediate relation with each other. It is also manifest from the face of the patent that these elements are intended to coact through the mediation of the operator. That such coaction produces new and improved results appellant argues from the face of the patent and asserts can be established by evidence; but at this stage of the case it is enough, on the question of fact, to accept the presumption of utility arising from the grant.

[2] There remains the question of law: Can a claim for a mechanism be saved from the doctrine of aggregation, as last defined, where there is no direct coaction between the elements, and where the only coaction comes through the mediation of the operator (or, what seems to us the same, the mediation of the thing or material operated upon)?

In Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500, the object of one of the patents was "to so arrange the paper as to prevent more than a given quantity of it to be withdrawn from the roll at a single operation, and so that in the act of withdrawing such given quantity it shall be automatically severed from the roll, leaving pendent from the roll a free end, which shall serve as a means of withdrawing a like quantity by the next user." This was accomplished by having an oval roll upon an oscillating holder and a cutter fixed in such a relation that when the holder was oscillated by a pull upon the free end of the paper the roll would strike the cutter, whereupon the given quantity would be severed and the holder would return to its initial position. Several claims included the paper roll as an element of the combinations. Against these claims it was contended, first, that unlawful attempts at combination were disclosed, and, second, that the claims, if valid, were not infringed.

"The first defense," said the court, "raises the question whether, when a machine is designed to manufacture, distribute, or serve out to users a certain article, the article so dealt with can be said to be a part of the combination of which the machine itself is another part. If this be so, then it would seem to follow that the log which is sawn in the mill; the wheat which is ground by the rollers; the pin which is produced by the patented machine; the paper which is folded and delivered by the printing press—may be claimed as an element of a combination of which the mechanism doing the work is another element. The motion of the hand necessary to turn the roll and withdraw the paper is analogous to the motive power which operates the machinery in the other instances. But without expressing an opinion upon this point, we think the facts of this case fail to sustain the charge of infringement."

Other combination claims excluded the paper roll as an element. Respecting these, the court remarked:

"No question is made but that the mechanism by which the paper is served out to the user involves a patentable novelty."

Now although the court did not explicitly consider the question herein propounded, it may be urged that this paper roll case argumentatively supports an affirmative answer. For the oscillating paper holder and

the fixed cutter have no direct connection, no immediate relation. It is only through the mediation of the operator that the parts coact to produce the new unitary results. Operator stands as motive power and paper roll as means of power transmission. So the oscillating holder and the fixed cutter (with their settings to bring them into one organization) can be a lawful combination only because the existence and the proper application of power are necessarily implied. Does not every claim of a mechanical combination say, "These elements, when power is properly applied, will co-operate to produce a new unitary result"? Is not this true of every patentable tool or machine? Utility is a statutory requirement. That tools and machines should be useful presupposes the existence and application of power. Whether the power be mediately or immediately human seems to us indifferent. For electricity, steam, and falling water have useful power only through human intervention, and in a machine are, after all, merely means of expressing the ultimate human power through the operator. And what difference does it make where the power is applied, whether at the beginning or the end or the middle of the group of mechanical parts? In a loom, for instance, is the operative law of the structure changed if the gears or belts, by which is transmitted from part to part the motive power that is applied only at the head of the group, should be omitted and the motive power applied independently to each part in proper time relation? Or if it were found that an intermediate belt between two parts could be omitted because the web of cloth was a sufficient power transmitter at that point?

At this session (Oshkosh Grass Matting Co. v. Waite Grass Carpet Co., 207 Fed. 937) we are upholding, against the defense of aggregation, in a machine for making grass twine, claims for combinations of "means for forcing the material forwardly, a funnel into which the material is received, compression rolls adapted to receive the material therebetween after said material leaves the funnel, and means, after the material is compressed, for wrapping a twine therearound," although the compression rolls, in the middle of the group of elements, are incapable, in the machine as organized by the inventor, of co-operating to produce the twine except through the mediation of the twine material.[2]

In stating the question we expressed our belief that it is immaterial whether the unclaimed mediator between otherwise unrelated elements be the material operated upon or the operator. The paper roll and the grass twine cases have to do with the material operated upon, as the connecting means. But in Burdett-Rowntree Mfg. Co. v. Standard Plunger Elevator Co. (C. C.) 196 Fed. 43 (affirmed by the Court of Appeals for the Third Circuit. 197 Fed. 743), the intervention of the

[2] On this phase of the subject see also: 1 Robinson on Patents, § 155; Taylor v. Wood, 1 Banning & A. 270; Hawes v. Antisdel, 2 Banning & A. 10; Stutz v. Armstrong (C. C.) 20 Fed. 843; Bowers v. Von Schmidt (C. C.) 63 Fed. 572, 583; Fuller v. Berger, 120 Fed. 274, 56 C. C. A. 588, 65 L. R. A. 381; Diamond Match Co. v. Ruby Match Co. (C. C.) 127 Fed. 341; Novelty Glass Co. v. Brookfield, 170 Fed. 946, 960, 95 C. C. A. 516; Rand, McNally & Co. v. Exchange Scrip-Book Co., 187 Fed. 984, 110 C. C. A. 322.

operator was indispensable to the mechanical elements' co-operating to produce the improved result. Improvement of existing automatic electric elevators was the subject-matter; and it consisted of organizing a "one-point control," whereby quicker and safer work was accomplished. The elements were the elevator car, the electric motor in the basement of the building, call bells, floor bells, and door signals. Call bells informed the motor operator at what floors the car was wanted; floor bells announced that the car had arrived and was waiting for passengers; and door signals showed the operator that shaft doors were closed before he started the motor.

"By the grouping and arrangement that are said to be merely aggregation, it seems plain that an intimately related whole has in fact been evolved, in which each part has been made more effective to accomplish the common object, and in which this increased efficiency is due to the new relation of each part to the others. The total result is certainly greatly improved in the several particulars already referred to; and, while it is not a tangible product that has been improved, the new method of operation produces a clearly perceptible advance in the art. Elevators with one-point control arrangement of signals and motor are operated more rapidly, more easily, more safely, and more efficiently, and this greatly improved operation seems to be a new and beneficial result produced by a new combination and arrangement of known elements within the meaning of the language used in Loom Co. v. Higgins, 105 U. S. 580 [26 L. Ed. 1177]."

Unless an affirmative answer can be given to our question, many inventions in which the unitary result would be more apparent than in the automatic electric elevator case, might be denied the protection of the statute.

It seems to us that the man who first provided a gun with sights made a valuable invention. And although there is no co-operation between the front-sight and the rear-sight, or between them and the gun, except through the mediation of the marksman, yet truly the elements are brought into one organization and there contribute to a new and useful result. Between the strings and the chin rest of a violin, the hand rest of a mandolin, the finger rest of a banjo, there is no connection except through the player. But it is possible that invention was required to produce the new organizations that made better playing possible. So with the banding wheel for china decoration, wherein a revolving disk holds the china plate and a fixed rest supports the decorator's hand. So, too, with the lathe and tool rest. In Union Edge Setter Co. v. Keith, 139 U. S. 530, 11 Sup. Ct. 621, 35 L. Ed. 261, the combination of a burnishing machine and a finger rest was found to be unpatentable, not in law, but in fact, by reason of the prior art. In the Selden automobile patent (Columbia Motor Car Co. v. Duerr & Co., 184 Fed. 893, 107 C. C. A. 215) the power of a gas engine is applied to the rear wheels of the vehicle through a clutch and reducing gears, and the separate power of the operator is applied to the front wheels through a steering wheel and column. Though there can be no co-operation between the driving mechanism and the steering mechanism except through the hands of the driver, no one questioned that the association of elements constituted a true combination.

[3] Our conclusion is that the statute should not be narrowed to

exclude improvements of the kind we have illustrated from the past, and that an affirmative answer to our question should be recorded.

As neither ground of demurrer is sustainable, the decree is reversed, and the cause remanded for further proceedings.