## H. H. ROBERTSON CO. v. KLAUER MFG. CO.

No. 248.

District Court, N. D. Iowa, E. D.

July 27, 1937.

William B. Kerkam and Gordon W. Daisley, both of Washington, D. C., J. Stanley Churchill, of Boston, Mass., and H. C. Kenline, of Dubuque, Iowa, for plaintiff.

Roberts B. Larson, Jennings Bailey, Jr., Francis D. Stephens, and W. A. Smith, Jr., all of Washington, D. C., and F. A. O'-Connor, of Omaha, Neb., for defendant.

SCOTT, District Judge.

Plaintiff, H. H. Robertson Company, brings suit in equity against Klauer Manufacturing Company, praying injunction and accounting for infringement of plaintiff's patent (Young and Gephart No. 1,589,581). This patent was issued June 22, 1926, on application filed December 28, 1922. Plaintiff's title is stipulated, as well as the manufacture and sale of defendant's alleged infringing device within the past six years.

While plaintiff's bill alleges the infringement of the patent generally, the parties by agreement have confined the controversy to claims 1 and 5, being the first and last claims of the patent. Claims 1 and 5 are as follows:

"1. A ventilator comprising an eduction pipe provided near its upper edge with a lip extended downward and outwardly for trapping air currents flowing upwardly along said pipe, a cap member located above said eduction pipe and separated therefrom a substantial distance, and a storm band of materially greater diameter than said eduction pipe surrounding the latter, said eduction pipe, cap member and storm band being constructed and arranged to have the lower end of the storm band extended below the top of the eduction pipe to prevent horizontally flowing air currents from entering the ventilator at the bottom thereof, and to have the upper end of the storm band extended above the lower edge of the cap member to prevent horizontally flowing air currents from entering the ventilator at its top and yet leave a substantial space between the lower edge of the cap member and a plane tangential to the upper edges of the storm band and eduction pipe and intersecting the longitudinal axis of the latter, to form a direct passage of substantial width from the eduction pipe to the atmosphere in the absence of obstructions therein, means for obstructing said direct passage to prevent the entrance of rain into the eduction pipe, and means co-operating with the storm band and eduction pipe to deflect to the outside of said storm band upwardly inclined flowing air currents. * * *

"5. A ventilator comprising an eduction pipe, a cap member located above said eduction pipe and separated therefrom a substantial distance, and a storm band of materially greater diameter than said eduction pipe surrounding the latter, said eduction pipe, cap member and storm band being constructed and arranged to have the lower end of the storm band extended below the top of the eduction pipe to prevent horizontally flowing air currents from entering the ventilator at the bottom thereof, and to have the upper end of the storm band extended above the lower edge of the cap member to prevent horizontally flowing air currents from entering the ventilator at its top and yet leave a substantial space between the lower edge of the cap member and a plane tangential to the upper edges of the storm band and eduction pipe and intersecting the longitudinal axis of the latter, to form a direct passage of substantial width from the eduction pipe to the atmosphere in the absence of obstructions therein, means for obstructing said direct passage to prevent the entrance of rain into the eduction pipe, and means co-operating with the storm band and eduction pipe to deflect to the outside of said storm band upwardly inclined flowing air currents."

Before discussing particular defenses, it will be helpful to describe more fully the character of plaintiff's device. The patent in question is a combination patent; that is, it is conceded that in a general way all of the elements are old and also parts of the combination old. A clear idea of some of the important elements entering into the combination is not readily obtainable from a mere reading of the claims themselves. In order to get the full picture in mind, it is necessary in addition to a reading of the claims to resort to the specifications of both elements and combination.

The specifications set forth in the application describe the elements and combination as follows:

"This invention relates to a ventilator for buildings, vessels, chimneys and like structures, and has for its object to provide a ventilator of maximum efficiency at a minimum cost.

"To this end, the ventilator is constructed so as to effectively keep the wind out of the ventilator; to provide for easy passage of the gaseous fluid from within the building to the atmosphere through the ventilator; and to prevent the rain from entering the building or other structure through the ventilator.

"A ventilator having these functions is especially adapted for use on flat roofs.

"The ventilator is also preferably provided with means for deflecting upwardly flowing air currents so as to prevent them from entering the ventilator.

"The ventilator provided with this deflecting feature is especially useful on pitched or inclined roofs. * * *

"In the present instance, is shown a construction of ventilator which is capable of being used on a building having a flat roof or on a building having a pitched roof, with equal efficiency.

"The ventilator herein shown is provided with an education pipe 10, a cap member 12, a storm band 13, which are suitably connected together, and have a definite relation to one another as will be described to obtain a ventilator of maximum efficiency.

"To this end, the cap member 12 is located above the outlet mouth or upper edge of the education pipe 10 within the storm band 13, and its lower rim or edge is separated from said outlet mouth a substantial distance, and the storm band 13 is made of a length equal to and preferably longer than the distance between the education pipe 10 and the cap member 12, so as to extend below the upper edge of the education pipe and above the lower edge or rim of the cap member, and thereby practically close the space between the cap member and the education pipe to the entrance of air currents flowing in a direction substantially at right angles to the axis of the storm band as indicated by the arrow 20.

"The storm band 13 is also made of such diameter or size with relation to the cap member 12 and education pipe 10, as to afford direct communication, in the absence of obstructions, from the education pipe to the atmosphere through the space between the cap member 12 and the upper edge of the storm band, as indicated by the dotted lines 21, Fig. 4.

"By making the storm band 13 long enough to extend below the throat or outlet mouth of the education pipe and above the rim or lower edge of the cap member, the wind is prevented from entering the ventilator when it flows in a horizontal direction indicated by the arrow 20, and the wind which passes over the ventilator has a maximum aspirating effect on the gases within the ventilator and draws them from the education pipe through the space between the cap member and the storm band. A ventilator of this construction could be used to advantage on flat roofs.

"If, however, air currents should also flow upwardly as well as horizontally, as would occur when the ventilator is used on a pitched or inclined roof, the efficiency of the ventilator thus far described, would be reduced by such upwardly flowing currents, which are represented in Fig. 4 by the arrow 23.

"To avoid this, the ventilator is provided with means for deflecting such upwardly flowing currents of air and cause them to pass upwardly outside of the ventilator.

"In the present instance, a deflecting band 25 constitutes such means. The deflecting band 25 is attached at its end of smaller diameter to the education pipe in any suitable manner, and is inclined upwardly and its upper end is made of larger diameter than the storm band so as to ensure the deflection of the upwardly flowing currents of air to the outside of the storm band and prevent them from entering the ventilator.

"While a ventilator having an unobstructed or free passage for the gases from the education pipe to the atmosphere through the space between the cap member and the storm band, is of the highest efficiency, such ventilator would permit rain, when falling at the proper angle, to enter the building through said direct passage, and therefore means are provided for preventing the passage of rain into the education pipe, with the least possible impairment of the efficiency of the ventilator.

"To this end, the ventilator is provided in the present instance with one or more baffle rings 27, which are located between the cap member 12 and the education pipe 10 so as to intercept the direct passage represented by the inclined lines 21.

"The baffle rings 27 are preferably made of substantially the same diameter as the rim of the cap member, as shown in Fig. 2.

"By reference to Fig. 2, it will be seen that any rain which enters the ventilator at its top on an angle indicated by the lines 21, would strike the upper surface of the baffle ring and pass through the passage between the storm band 13 and the eduction pipe 10 and strike upon the deflecting band 25, and would run down thereon and escape through the opening 28 between the lower rim of the said band and the eduction pipe, or if the deflecting band should be fitted tight to the eduction pipe, the rain could pass through suitable drainage openings in the deflecting band.

"To prevent air passing up through the drainage opening 28 from entering the ventilator, the eduction pipe 10 is provided on its outer surface with an outwardly extended and preferably a downward inclined lip 30, which acts to trap the air flowing upwardly along the eduction pipe."

The defendant pleads numerous defenses, restating them in different form in its answer, but classifies and restates them in its brief under seven succinctly stated propositions, as follows:

"1. The claims are invalid as based on 'new matter' not disclosed in the original application.

"2. The claims are invalid as themselves being vague and indefinite and also as based on an indefinite and vague disclosure.

"3. All of the claims of the patent are invalid since one of the patentees admitted that every element of some of the claims was disclosed in a publication known to him at the time he made the patented structure.

"4. The claims are clearly invalid in view of the prior art patents which disclose every element and every feature thereof.

"5. The claims are clearly invalid as being drawn to an aggregation.

"6. The claims are clearly invalid as not defining an invention.

"7. The claims are invalid since they define a structure which was made, sold and used more than two years prior to the filing of the Young and Gephart application."

The foregoing propositions, it will be noted, challenge the validity of the claims in suit. Defendant also denies infringement and contends that the evidence fails to establish infringement by the defendant.

As the application originally went before the Patent Office, all of the original five claims were rejected as follows: Claims 1 and 4 on "Herrmann," "Jardine," "Tanner," and "Keane"; claim 2 on the same references, in view of either "Auld" or "Kennard"; claims 3 and 5 on "Herrmann," "Keane," or "Middleton," in view of "Auld" or "Kennard." The claims were, however, amended by slight changes in language, though original claim 5 was dropped for a time, but later a substitute claim 5 was put in by amendment.

The patents above referred to upon which the original claims were rejected are now urged as anticipating the patent in suit. A surprising circumstance is here noted: That "Day," No. 297,972, May 6, 1884, was not referred to during the consideration of the application in the Patent Office, notwithstanding "Day" discloses both elements and a combination of greater similarity than any of the other references. "Day," however, is pleaded in anticipation in this case.

It will be noted from the foregoing that plaintiff's patented device consists of a combination of six separate elements: An eduction pipe, a cap member, and a storm band, which may be considered as the basic members of the combination, inasmuch as these three constitute a complete ventilator in themselves, and will function perfectly under ordinary conditions on a flat roof without the presence of any of the other three. The other three are: A downwardly extending lip at the top of the eduction pipe, the rain baffle disposed between the cap member and the end of the eduction pipe, and the wind baffle or deflector disposed on the eduction pipe below the storm band. The storm band is formed and disposed to extend above the upward edge of the cap member and below the upward edge of the eduction pipe. The functions of these several elements are disclosed in the specifications quoted.

We now come to a consideration of the various grounds of defense urged by the defendant: First, defendant contends that the history of the application in the Patent Office discloses the invalidity of the patent because of "new matter" brought in by way of amendment after the original claims had been rejected. Answering this suggestion, plaintiff's counsel summarizes these contentions in the following language:

"The several items charged by defendant to constitute 'new matter' are as follows:

"(1) The addition of a showing of the deflecting band 25 to Fig. 1, even though this deflecting band was clearly shown in original Figs. 2 and 4.

"(2) The addition of the lines 41 and 42 to Fig. 2 to indicate the space there between, even though lines 21, which indicated the same space, appeared in original Figs. 2 and 4.

"(3) The addition to the specification of the matter appearing between line 71, page 1, and line 5, page 2.

"(4) The addition to the specification of the matter appearing between lines 76 and 96, page 2."

Counsel for plaintiff further supports argument in resistance of this claim by citation of the following authorities: Cleveland Foundry Co. et al. v. Detroit Vapor Stove Co. (C.C.A.) 131 F. 853, 857, 858; Boyce et al. v. Stewart-Warner Speedometer Corporation (C.C.A.) 220 F. 118, 123, 124; Hobbs v. Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586; General Electric Co. v. Cooper Hewitt Electric Co. (C.C.A.) 249 F. 61, 64; Ex parte Curtis (Cust.& Pat.App.) 81 F.2d 236; Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053.

I do not hesitate in arriving at the conclusion that defendant's contention that the claims are invalid because of "new matter" is not sustained by the evidence under the authorities cited. There was ample foundation in the original application for the allowance of the amendments by the examiner.

The contention that the claims in suit are invalid as based upon a vague and indefinite disclosure I think equally without foundation. While it is true that some portions of the claims would without the aid of specifications be somewhat uncertain and vague, it is permissible to examine the specifications for further enlightenment, and, when the specifications are examined, the claims seem clear.

The third contention that the claims are invalid since one of the patentees admitted that every element of some of the claims was disclosed in a publication known to him at the time he made the patented structure is not supported by the evidence. It is true that the patentee referred to admitted a familiarity with the Bureau of Standards article, in evidence. It is not true that the article pointed out the entire combination embraced within the claims in suit. Counsel for the defendant contends that the statement in the Bureau of Standards article: "It is best not to allow the air to enter the ventilator for it must then be exhausted and will be exhausted at the expense of the air in the ventilator pipe," is the directing perception and conception of the patented structure. I think that this statement merely shows that the writer recognized the desirability of excluding the outside air currents from the ventilator, but contains no suggestion of any particular means to that end, let alone a suggestion of means further or otherwise co-operating with the combination of elements. I think this contention of the defendant is without merit.

Defendant's fourth contention, that the claims are invalid in view of the prior art, I pass for discussion in connection with the claim of noninfringement.

Defendant's fifth contention, that the claims are clearly invalid as being drawn to an aggregation, I think not supported by the evidence. The very nature of the device patented excludes the idea of independent functioning of its several combined elements. There is no particular element in the combination that does not function in some degree in cooperation with one or more other elements. Having in mind the theory of the combination in the Young and Gephart device, no single element could be excluded without in a material degree defeating the aim of the combination. The following cases cited in plaintiff's brief are helpful in this connection: Krell Auto Grand Piano Co. of America v. Story & Clark Co. et al. (C.C.A.) 207 F. 946, 951; Line Material Co. v. Brady Electric Mfg. Co. (C.C.A.) 7 F.2d 48; Skinner Bros. Belting Co. v. Oil Well Improvements Co. (C.C.A.) 54 F.2d 896, 898, 899.

The defendant's sixth point, that the claims do not define an invention, is not separately discussed in the brief, and I shall treat that point in discussing the prior art and the matter of infringement.

Defendant's seventh proposition, that the claims are invalid since they define a structure which was made, sold, and used more than two years prior to the filing of the Young and Gephart application, is not sustained by the evidence, unless it be assumed that the patent in suit was antici-

pated in the prior art. In my opinion the evidence fails to disclose in the productions of the Burt Manufacturing Company or the Waterloo Manufacturing Company, devices embodying the combination disclosed by the patent in suit. So far as the alleged Hoch prior use is concerned, I do not find such use established by the evidence. No structure was produced or could be found existing. The claim finds support only in the testimony of the two Hochs, one of whom is an employee of the defendant, and the testimony of these witnesses is not at all satisfactory. I find the use contended for in that case not sustained by the evidence.

We come now to a consideration of the two ultimate propositions presented by the record: First, Does the combination in question disclose invention in view of the prior art? Second, If plaintiff's device discloses invention not anticipated in the prior art, was it infringed by the defendant's device?

As heretofore stated, the patent in suit is a combination patent, all elements of which taken independently are old, although neither identically formed or identically disposed. Considering the purpose of the device and the varying and variable conditions under which it is supposed to function, I have no doubt that the combination discloses invention, unless it be held to have been anticipated in the prior art. The defendant pleads anticipation, and in support of that defense cites the following patents:

.“Kennard, 152,647, June 30, 1874,
Robinson, 177,280, May 9, 1876,
Day, 297,972, May 6, 1884,
Herman, 399,099, March 30, 1886,
Martin, 389,398, Sept. 11, 1888,
Keane, 483,384, Sept. 27, 1892.”

After considering these patents, I am of opinion that “Day, 297,972, May 6, 1884,” discloses greater similarity both in elements and combination than any of the other references, and that the design disclosed in that patent may safely be taken to illustrate the prior art so far as this case is concerned. “Day,” however, differs from Young and Gephart in both the form and combination of the cap member and rain baffle, and may in that respect well differ in the manner of functioning. “Day” also differs in the type of wind baffle; that is, the deflecting element disposed below the storm band. Supposing “Day” to be installed upon a pitched roof, it would be likely to function with much less efficiency than the patent in suit. Considering the relative differences in the manner of combining the cap member with the rain baffle, the eduction pipe, and the storm band, and the relative difference in the type and disposition of the wind baffle, I think it altogether probable that “Day” would be less efficient in keeping the wind out of the ventilator, and also in producing that increased aspirating effect claimed for the patent in suit. I am impressed, however, with the thought that, to avoid the “Day” combination, the combination disclosed by the patent in suit must be construed very narrowly; and that it would not do to accept the broad language of the concluding clause of these claims without narrowing that language to meet the description contained in the specifications. The expression, “means co-operating with the storm band and eduction pipe to deflect to the outside of said storm band upwardly inclined flowing air currents,” could be read upon either “Day” or the alleged infringing device of Klauer. However, the very purpose of the specifications is to render certain and to limit such general descriptions. Considering all phases and differences, I am inclined to the opinion that the combination disclosed by the patent in suit, if brought by construction to conform to the type of device specified in the preliminary description of the application, is not anticipated by the “Day” device. I am forced to the admission, however, that the question is a close one and that such closeness would certainly be apparent if the “Day” patent had not expired and this suit were brought by the owner of that patent against the present plaintiff.

We come now to the question of infringement; that is to say, Does the Klauer alleged infringing device embody a substantially similar combination of elements to that disclosed by the patent in suit; and does that combination in its entirety perform the same function and in the same way?

It is helpful to lay side by side the figures and drawings of the patent in suit, the figures and drawings of the “Day” patent, the Chart B, representing the alleged infringing device, shown at page 99 of the defendant's trial brief, and the three models, Plaintiff's Exhibits, 19, 20, and 21. The following illustrations disclose the drawings and exhibits referred to:

560

Chart B

Airflow in the Klauer Ventilator
based on testimony of Dr. Davies

It will be recalled that the claimed crowning purpose of the inventors, Young and Gephart, was to produce a combination that would function with a high degree of efficiency upon a pitched roof. To that end they conceived what has been termed the "vitalizing element"; that is to say, the wind baffle disposed below the storm band and projecting upwardly and with a diameter greater than the diameter of the storm band. It was designed that this element would function to deflect the upwardly flowing air currents to the outside of the storm band, and over the top of the ventilator, excluding air from entering the ventilator below and thereby increasing the aspirating effect of the over current, leaving the area of low pressure on the lee side to form a path of least resistance for the air and gases coming out of the ventilator. With this description in mind, the task is to compare the alleged infringing device both as to structure and function with the patent in suit. In structure the Klauer wind baffle or deflector has little resemblance to Young and Gephart. It is not disposed below the storm band upon the eduction pipe projecting upwardly, but it is disposed within the storm band and joined to the inner surface of the same

562

and projects downwardly forming a triangularly disposed space around the inner surface of the storm band. The element is not designed particularly to deflect the upwardly inclined air currents to the outside of the storm band and over the top to thereby increase the aspirating effect, but the apparent design is that the upwardly inclined air current will be entrapped and deflected in its onward general course around the sides to an escape on the lee side into the low pressure area. It is contended that this device fails in efficiency in three different respects: First, in failing to increase the aspirating effect by deflecting the upwardly inclined air current over the ventilator; second, by permitting a greater current to enter the ventilator; and, third, by neutralizing the low pressure area tending in a degree to retard the escape of the gases from the eduction pipe. Again, with all things considered, I am unable to conclude that the Klauer device performs the same function in the same way as does the Young and Gephart device.

Finally, I am of opinion that the patent in suit is valid if given a construction sufficiently narrow to meet the requirements' of the specifications. I am further of opinion that the combination disclosed by the Young and Gephart patent is not infringed by the alleged infringing device of Klauer.